## MICHAEL LYNCH *vs.* OREN D. ALLYN.

Hampden.     September 27, 1893. — December 1, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Personal Injuries — Due Care — Negligence — Employers' Liability Act —*
   *" Ways, Works, or Machinery " — Obvious Peril — Assumption of Risk —*
   *Law and Fact — Notice.*

In an action for personal injuries occasioned to the plaintiff, while in the defendant's employ, by the falling upon him of a bank of earth, it appeared that the bank, which was on the land of third person, was composed of hard-pan and clay with some sand, and was from eight to ten feet high and fifteen or twenty feet long; that the plaintiff, who was a man of middle age, had been in this country but a short time, and had worked in the open air in Ireland, digging with a spade or shovel, but had never used a pick; that when he was first employed by the defendant he was set to work digging up earth and picking up roots; and that, after doing this work for a few days, he was set to work on the bank, and told by the defendant's superintendent to go down to the bottom, get into the bank, and undermine it, and that the superintendent " would get on it with bars." The latter testified that " they always begin by picking at the bottom of the bank, and when the proper depth is reached they pry the top over with bars, and it falls over." The plaintiff testified that, after he had been at work for about ten minutes, the superintendent left; that he continued to work for some time, when the bank fell and broke his leg; that " he saw no one watching the bank; that no one told him of any danger or risk about the bank;

that he thought there was no danger or risk about the bank; and he knew nothing at all about it, only just to do what he was told"; and that when he went to work he noticed that the bank "leaned out a little at the top." The superintendent testified that "a bank with sand in it is more liable to fall than a clay bank, and he meant to guard against it; that when he left the bank he intended to come back very soon; and that he understood all the time he was looking after the bank and the men." In answer to the question, "Is it not true that a bank, before it gives way, gives some indication that it is going to fall?" he said, "Not certainly." *Held,* that the question whether the plaintiff was in the exercise of due care was rightly submitted to the jury.

At the trial of an action under the St. 1887, c. 270, for personal injuries occasioned to the plaintiff, while in the defendant's employ, by the falling upon him of a bank of earth, which he was engaged in undermining by direction of the defendant's superintendent, the second count of the declaration being upon § 1, cl. 1, of the statute, which gives a right of action for injuries caused by the negligence "of any person in the service of the employer and intrusted by him with the duty of seeing that the ways, works, or machinery were in proper condition," the defendant is not entitled to a ruling that "the plaintiff cannot recover under the second count of his declaration, as there was no evidence that there was any negligence on the part of the defendant."

The liability of a bank of earth, upon which laborers employed by a person are at work, to fall when undermined if not shored up, is not a "defect in the condition of the ways, works, or machinery connected with or used in the business of the employer," within the meaning of St. 1887, c. 270, § 1, cl. 1, when the work on the bank is simply the levelling of it for the purpose of grading the land of a third person.

At the trial of an action under St. 1887, c. 270, for personal injuries occasioned to the plaintiff, while in the defendant's employ, by the falling upon him of a bank of earth, which he was engaged in undermining by direction of the defendant's superintendent, the third count of the declaration, under § 1, cl. 2, of the statute, being based upon the negligence of the superintendent, the defendant is not entitled to a ruling that "the plaintiff cannot recover under the third count, as there was no evidence of the negligence of the defendant."

In an action for personal injuries occasioned to the plaintiff, while in the defendant's employ, by the falling upon him of a bank of earth, which he was engaged in undermining by direction of the defendant's superintendent, who had left the spot and was absent at the time of the accident, the superintendent testified that the way the bank was to be taken down was by picking at the bottom until a proper depth was reached, and then prying over the top with bars; that he knew there was sand in the bank, and that such a bank is more liable to fall than a clay bank; that he meant to guard against it; and that when he left he intended to come back very soon. He also testified that he was gone only fifteen minutes, but there was evidence that he was gone a much longer time. There was also evidence that the plaintiff knew that the top of the bank was to be pried over with bars; that he did not know that there was danger of the bank falling by the force of gravitation; and that he had had no experience in work of this kind. There was further evidence, which was contradicted, that some of the plaintiff's fellow servants got upon the bank and attempted to pry it over just before it fell; and that the plaintiff remained below, knowing this fact. *Held,* that the defendant was not entitled to a ruling that, "upon the whole evidence, there was no negligence of the superintendent in failing to warn, or instruct, or notify the plaintiff of the danger of the bank falling, as the peril was obvious."

If an inexperienced workman, who is engaged in undermining a bank of earth, continues to work there after his employer's superintendent, whose duty it is to watch the bank and to warn him of the danger of its falling, has left the place with the intention of returning soon, and the workman is injured before his return by the falling of the bank upon him, it cannot be ruled, in an action against his employer for the injury, that he assumed the risk attendant upon the superintendent's absence, but the question is for the jury.

If an inexperienced workman, while engaged in undermining a bank of earth, is injured by the falling of the bank upon him during the temporary absence of his employer's superintendent, whose duty it is to watch the bank and to warn him of the danger of its falling, it is a question for the jury, in an action under St. 1887, c. 270, against his employer for the injury, whether it was not negligence in the superintendent, who testified that he understood all the time that he was looking after the bank and the men, to allow the plaintiff to work under the bank without shoring up the top of it, or stationing some one to give warning.

A notice to an employer, by a person injured while in his employ, stating the time and place of the injury and the cause of it as " the falling of a bank of earth," which he was engaged in undermining by direction of the employer's superintendent, upon whose alleged negligence an action for the injury is based, is sufficient under the St. 1887, c. 270, without referring to the superintendent or to his conduct.

LATHROP, J.   This is an action for personal injuries sustained by the plaintiff, while in the employ of the defendant, by reason of the falling upon him of a bank of earth.   The declaration contained three counts, the first at common law, the second under the St. of 1887, c. 270, § 1, cl. 1, and the third under § 1, cl. 2, of the same act.   At the trial the plaintiff elected to proceed under the last two counts.   The case was submitted to the jury, who returned a verdict for the plaintiff, and the case comes before us on the defendant's exceptions to the refusal of the presiding judge to give certain rulings requested.

There was evidence from which the jury would have been warranted in finding the following facts.   The bank in question was on the land of a third person, and was composed of hard-pan and clay with some sand.   It was from eight to ten feet high, and fifteen or twenty feet long.   The plaintiff had been in this country but a short time.   He was a man of middle age, and had worked in the open air in Ireland, digging with a spade or shovel, but had never used a pick.   When he was first employed by the defendant, he was set to work digging up earth and picking up roots.   After doing this work for a few days, he was set to work on the bank, and told by the defendant's superintendent to go down to the bottom, get into the bank and under-

mine it, and that the superintendent " would get on it with bars."
The superintendent, who was a witness for the defendant, testi-
fied, " They always begin by picking at the bottom of the bank,
and when the proper depth is reached they pry the top over with
bars, and it falls over."

After the plaintiff had been at work for about ten minutes, as
he testified, the superintendent left. The plaintiff continued to
work for some time, when the bank fell and broke his leg. He
testified that " he saw no one watching the bank; that no one
told him of any danger or risk about the bank; that he thought
there was no danger or risk about the bank; and he knew noth-
ing at all about it, only just to do what he was told." He also
testified that when he went to work he noticed that the bank
" leaned out a little at the top." The superintendent testified
that " a bank with sand in it is more liable to fall than a clay
bank, and he meant to guard against it; that when he left the
bank he intended to come back very soon; and that he under-
stood all the time he was looking after the bank and the men."
In answer to the question, " Is it not true that a bank, before it
gives way, gives some indication that it is going to fall?" he
said, " Not certainly."

1. The first ruling asked for was, that on the whole evidence
the plaintiff was not in the exercise of due care, and cannot re-
cover under the second or third counts of his declaration. We
are of opinion that the judge rightly refused to give this instruc-
tion, and left the question of the plaintiff's due care to the jury.
While there was evidence coming from the defendant's witnesses
tending to show carelessness on the part of the plaintiff, the jury
were not bound to believe these witnesses. The case is not one
where there was no evidence of what the plaintiff was doing at
the time the bank fell. The jury had all the facts and circum-
stances in evidence before them, and it was for them to pass upon
the question whether or not the plaintiff was in the exercise of
due care.

2. The second request was: " The plaintiff cannot recover
under the second count of his declaration, as there was no evi-
dence that there was any negligence on the part of the defend-
ant." Section 1, cl. 1, of the St. of 1887, c. 270, is not, however,
limited to the negligence of an employer, but includes the

negligence "of any person in the service of the employer and intrusted by him with the duty of seeing that the ways, works, or machinery were in proper condition." The court properly refused to give this ruling.

3. The third request made by the defendant was as follows: "The plaintiff cannot recover under his second count, because there was no evidence that the accident occurred by reason of any defect or want of repair in the condition of the ways, works, or machinery connected with or used in the business of the defendant." This request raises the principal question in the case, namely, whether the liability of a bank of earth, upon which laborers employed by a person are at work, to fall when undermined if not shored up, can be said to be a "defect in the condition of the ways, works, or machinery connected with or used in the business of the employer," when the work on the bank is simply the levelling of it for the purpose of grading the land of a third person. It seems to us that clause 1 of this section has no application to a case like the one before us, and that the request should have been given. It must be borne in mind that "the right of an employee to maintain an action under this statute is not identical with his right to maintain an action at common law. It may be greater, or it may be less." *Coffee* v. *New York, New Haven, & Hartford Railroad*, 155 Mass. 21, 22. The language of the section seems to us to point to ways and works of a permanent character, such as are connected with or used in the business of an employer. Hence, in *Howe* v. *Finch*, 17 Q. B. D. 187, it was held that the section did not apply to ways or works in process of construction. And in *Willetts* v. *Watt*, [1892] 2 Q. B. 92, where a workman was injured by falling into a catch-pit in the floor of a workshop which was generally kept covered, but the cover of which was off at the time of the accident for a temporary purpose, it was held by the Court of Appeal that there could not be said to be a defect in the condition of the way; and Lord Justice Fry said that the language of this section pointed to a defect of a chronic character. All of the members of the court concurred in saying that there was no defect in the condition of the way, but merely a negligent user of it, by allowing the way to be used when the lid was off, without giving warning.

So it has been held by this court that rubbish of an accidental or temporary character on the floor of a room where an employee is at work cannot be said to be a defect in the condition of the ways, within the statute. *O'Connor* v. *Neal*, 153 Mass. 281. *May* v. *Whittier Machine Co.* 154 Mass. 29.

And in *Regan* v. *Donovan*, 159 Mass. 1, it was held that contractors, by setting the plaintiff to work on the premises of a third person where there were movable steps leading into a cellar, going down which the plaintiff was injured, could not be said to adopt the steps as a way used in their business.

The reasoning in the case of *Brannigan* v. *Robinson*, [1892] 1 Q. B. 344, relied upon by the plaintiff, does not seem to us to be in accord with the earlier decision of the same court in *Howe* v. *Finch*, or with the later decision of the Court of Appeal in *Willetts* v. *Watt*, or with our own decisions, and we cannot follow it.

4. The defendant's fourth request for a ruling that "the plaintiff cannot recover under the third count, as there was no evidence of the negligence of the defendant," was properly refused, because this count is based upon the negligence of the defendant's superintendent.

5. The fifth request for a ruling presents more difficulty. This request was as follows: "Upon the whole evidence there was no negligence of the superintendent in failing to warn, or instruct, or notify the plaintiff of the danger of the bank falling, as the peril was obvious." While we have no doubt of the power and of the duty of the court, in a case either at common law or under the St. of 1887, c. 270, where the peril is obvious, so to rule, as matter of law, yet we are of opinion in this case that, on the evidence, the question was for the jury. The case was not one where a man was set to work to undermine a bank which was expected to fall by the law of gravitation, and where he was expected to look out for himself. In such a case we should have no doubt that the danger would be obvious. *Griffin* v. *Ohio & Mississippi Railway*, 124 Ind. 326. *Swanson* v. *La Fayette*, 33 N. E. Rep. 1033. In the case at bar, it appears from the testimony of the defendant's superintendent that the way this bank was to be taken down was by picking at the bottom until a proper depth was reached, and then to pry the top

over with bars; that he knew there was sand in the bank, and that such a bank is more liable to fall than a clay bank; that he meant to guard against it; and that when he left he intended to come back very soon. It is true that the superintendent testifies that he was gone only fifteen minutes, but there is evidence that he was gone a much longer time. There was also evidence that the plaintiff knew that the top of the bank was to be pried over with bars; that he did not know that there was danger of the bank falling by the force of gravitation; and that he had had no experience in work of this kind. While there was evidence in behalf of the defendant that some of the fellow servants of the plaintiff got upon the bank and attempted to pry it over, just before it fell, and the plaintiff remained below knowing this fact, this evidence was contradicted, and the jury may not have believed the witnesses for the defendant. On the evidence, we do not think that the danger of the bank falling was so obvious that the judge ought to have given the ruling requested.

The defendant further contends that, as the plaintiff knew that the superintendent had gone away, and was no longer watching the bank, by continuing to work there afterwards he assumed the risks attendant upon that absence. In support of this proposition the defendant cites the case of *Hatt* v. *Nay*, 144 Mass. 186, where it was held that " if a workman knows that the foreman under whom he is working is incompetent, but continues to work under him, making no complaint to the master, and not calling his attention to it, he must be held to have assumed the risk and hazard arising therefrom," and cannot maintain an action at common law if he is injured by the carelessness of the foreman. In the case at bar the superintendent left with the intention of returning soon. It cannot be said, as matter of law, that the plaintiff was bound to lay down his pick until his return. He had a right to rely upon the superintendent's returning in time, even if he knew that there was danger of the bank falling, and there was evidence that he did not know this. At least this was a question for the jury.

6. The sixth request for a ruling was as follows: " The absence of the superintendent from the scene of the accident, while he was engaged elsewhere in his other work, does not constitute negligence of one exercising superintendence within the mean-

ing of the St. of 1887, c. 270, § 1, cl. 2." We have no doubt that, when the negligence of a superintendent is relied upon, the negligence must occur not only during the superintendence, but in the exercise of it. *Fitzgerald* v. *Boston & Albany Railroad*, 156 Mass. 293. *Cashman* v. *Chase*, 156 Mass. 342. In the case at bar the superintendent testified that he understood all the time that he was looking after the bank and the men. This, from the context, refers to the time when he was away from the bank. It was a question for the jury whether it was not negligence in the superintendent to allow the plaintiff to work under the bank without shoring up the top of it, or stationing some one to give warning. *Connolly* v. *Waltham*, 156 Mass. 368. See also *Willetts* v. *Watt, ubi supra.*

7. The remaining question is as to the notice. The defendant asked the judge to rule that it did not sufficiently describe the time, place, and cause of the plaintiff's injury, and was insufficient to enable the plaintiff to recover under the second and third counts. The notice sets forth the time, place, and cause of the injury, stating the cause to be " the falling of a bank of earth." The only objection taken by the defendant at the argument before this court was, that the notice did not refer to the defendant's superintendent, or to his conduct. We do not think it was necessary that it should do so. The cause of the injury was properly stated. It was not necessary for the plaintiff to state the cause of that cause. *Whitman* v. *Groveland*, 131 Mass. 553. *Donahoe* v. *Old Colony Railroad*, 153 Mass. 356.

As the jury returned a general verdict for the plaintiff, and as the third request for instructions should have been given, the order must be,

*Exceptions sustained.*

*J. B. Carroll*, for the defendant.
*T. B. O'Donnell*, for the plaintiff.