### CHARLES LANG *vs.* JOSEPH C. TERRY.

Bristol.   January 10, 1895. — February 28, 1895.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Personal Injuries — Due Care — Law and Fact — Evidence.*

In an action for personal injuries, it appeared that the plaintiff was employed as a deck hand on a barge owned by the defendant, which was fitted with a derrick and boom, block and falls, and a steam hoisting engine to operate the same; that another barge also belonging to the defendant came alongside with a load of spiles, which were to be transferred to the first named barge; that as the plaintiff was engaged in putting some boards over an iron casting on the deck near the bow of the boat, in accordance with directions of the captain, he was struck and injured by a spile which was being so transferred without the use of a guide rope, and which did not swing from the derrick as it was intended to, but caught in the boat's rigging and then swung against the plaintiff; that a warning was given him to look out just as he was struck, but he did not have time to avoid the blow; that he could have seen the spile before it struck him, if he had been looking for it; and that he had been employed on the boat for several years, and had seen similar work done there, a guide rope being sometimes but not always used.   He testified that he knew they were going to lift the spile when they got ready, and every one was out of the way, but he did not suppose they were ready to start when they did.   A witness testified that, from the time they began to fasten the spile to the derrick chain until the signal was given to hoist, it was two or three minutes, but the hoisting itself occupied about a second.   *Held,* that it was a question of fact for the jury whether the plaintiff was in the exercise of due care.

In an action for personal injuries received by the plaintiff, who was a deck hand on the defendant's boat, from the blow of a swinging spile which was being transferred from another boat owned by the defendant, by means of a derrick and steam hoisting engine, without the use of a guide rope, a witness who was

an expert in the manner of using derricks and hoisting timbers was asked the following question : " Whether or not, having heard the derrick described, a derrick equipped as this was, without a guide rope, is a safe and proper derrick to raise spiles of that kind ? " to which he answered, " No." He was then asked, " What would be the usual and proper way of attaching a guide rope there ? " referring to the hoisting in question; and, in his answer, described the method to be used. *Held*, that the questions and answers were properly admitted in evidence.

TORT, for personal injuries received by the plaintiff, while in the defendant's employ, from the blow of a swinging spile. Trial in the Superior Court, before *Sherman*, J., who allowed a bill of exceptions, in substance as follows.

The plaintiff testified that, on the day of the accident, he was employed by the defendant on a vessel called the Daisy, which was a barge or lighter about sixty feet in length, without motive power of its own, but fitted with a derrick and boom and accompanying block and falls, and a steam hoisting engine to operate the same ; that the only persons employed on the Daisy at that time were Walter Terry, the captain of the boat, and the plaintiff, who were also the only hands belonging to that boat ; that Terry was over the plaintiff, who obeyed his orders ; that the Daisy was at a wharf in Fall River, and, together with another vessel called the Archer, and also belonging to and engaged in the defendant's business, was unloading spiles about thirty-five feet in length ; that the Archer was a steam barge, and was also fitted with a derrick and steam hoisting engine similar to those on the Daisy, and on the day of the accident had a crew of five men, employees of the defendant ; that the Archer came alongside of the Daisy with a load of spiles, of which six had been transferred and the remainder were being transferred from the deck of the Archer to the deck of the Daisy ; that the crew of the Archer fastened a chain around a spile, then by means of the Archer's derrick and engine raised the spile from the Archer's deck and lowered it so as to rest transversely across the rails of the two boats, and finally fastened the Daisy's chain around the spile, and by means of the derrick and engine of the latter boat laid the spile lengthwise on the Daisy's deck ; that the plaintiff had nothing to do with fastening the spiles or hoisting or lowering them on either boat, except that he would occasionally lend a hand in taking hold of the spile and steadying it

into place on the Daisy's deck, and at the time was doing other things on the deck besides helping to steady the spiles; that several minutes before the accident, he was standing on the after part of the Daisy, and was sent by Terry to put some boards over an iron casting which projected four inches above the deck at about ten feet from the bow; that he then had to go the length of the boat and hunt up two pieces of board which he then fixed around the casting; that he laid the boards down, and while there, as he went to turn away, he heard some man sing out, "Look out, Charlie"; that he just turned his head, saw a shadow, and felt a shock, and that was all he remembered; that when he had gone along with the boards and had put them down, he did not have time to look around to see what they were doing, and after he heard the cry of "Look out," he did not have time to get out of the way; that when he started forward to cover the casting the men were not in the act of hoisting on board of the Daisy, and at the time he went forward they were hoisting over there, but although it was possible for him to see the hoisting he did not take notice of it; that from the time he started with the boards to the time of the blow from the spile it was three or four minutes; that he did not notice whether they were using guide ropes in the hoisting to control and direct the course of the spiles; that, if they were not using one, there was no guide rope on board either boat; that at previous times he had seen them hoisting and put on a guide rope to keep the spiles from swinging, and sometimes they hoisted without a guide rope; that he had worked on the Daisy eight or nine years; that during the last five years of that period a similar operation of transferring spiles from the Archer to the Daisy had occurred perhaps once or twice when he was present; that he knew the men came there to transfer the spiles from the Archer to the Daisy, and that they were going to hoist them with those derricks; that the work of hitching the spiles on to the derrick and of hoisting them was in his plain view when he was looking at them; that he knew they were going to lift the timber when they got ready, and everybody was out of the way, and did not suppose that they were ready to start when they did; that the work of transferring the spiles previously begun and carried on had been suspended

while some old lumber was being removed from the Daisy's deck to make room for additional spiles; and that the work of transferring the spiles did not begin again until he started forward.

William F. Bennett testified for the plaintiff that he was captain of the Archer on the day of the accident, and saw the accident happen; that the plaintiff was within three or four feet of the smoke-stack; that the end of a spile thirty-five feet in length struck the plaintiff between the shoulders, knocking him down and breaking his leg; that the spile was hung on the Daisy's boom, and no guide rope was used; that the spile swung very near the place where it was intended to swing, but caught against the ratlines on the rigging of the Daisy, and caused the end to lift a little, and so fell upon the plaintiff; that, to the best of his recollection, the plaintiff had turned away from the smoke-stack when struck, and was about sidewise to the spile; that there was nothing to obstruct his view from the spile, if he had looked that way; that from the time the spiles began to be chained on the derrick until the signal was given to hoist, it was two or three minutes, and that the hoisting itself occupied about a second; that the defendant had no storehouse where he kept appliances, tools, and ropes, except on board the boat; and that there were plenty of ropes on board the boat.

Robert Nicholson, after having been qualified as an expert in the manner of the use of derricks and the hoisting of timbers, particularly on barges similar to the Daisy, was asked the following question: "Whether or not, having heard the derrick described, a derrick equipped as this was, without a guide rope, is a safe and proper derrick to raise spiles of that kind?" and answered, "No." The defendant objected to the question and answer, but they were admitted; and the defendant excepted. The witness then testified as to what a guide rope consisted of, and that there ought to be a hook attached to it; that properly it ought to be fastened to the hook in the block when raising a stick of timber like the spile; and that the guide rope was to keep the stick from going away from where it ought to go.

The same witness was also asked the following question: "What would be the usual and proper way of attaching a guide rope there?" referring to the hoisting on the Daisy. To which

he answered: "To take that hook, and hook right into the block to keep the boom and fall from swinging too fast after it is raised from its bearing." This question and answer were admitted, against the defendant's objection; and the defendant excepted.

Walter D. Terry testified for the defendant that he had been engaged in the business thirteen years; that he did not use a guide rope for hoisting spiles when two vessels were side by side; and that they considered it safer without them.

At the close of the evidence, the defendant asked the judge to direct a verdict for the defendant, upon the ground that the plaintiff had failed to offer sufficient evidence of his due care; but the judge refused so to do.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*R. W. Nason*, for the defendant.

*J. W. Cummings*, for the plaintiff.

KNOWLTON, J. The principal exception saved in this case was to the refusal of the presiding justice to rule that there was no evidence of due care on the part of the plaintiff.

At the time of the accident, the plaintiff was engaged in the performance of his duty, putting some boards over an iron casting on the deck near the bow of the boat, in accordance with the direction of the captain. He was struck by a swinging spile which was hoisted by a derrick and steam hoisting engine for the purpose of being transferred from the steam barge to the barge on which he was working. The spile was hoisted and swung around without the use of a guide rope. It appears that he could have seen the spile before it struck him if he had been looking for it, and he testified that he knew they were going to lift the timber when they got ready and everybody was out of the way; but he did not suppose they were ready to start when they did. There was evidence that a warning was given him to look out just as he was struck, but not in time to enable him to avoid the swinging timber. One witness testified that the hoisting, after the chain was fastened to the spile, occupied only about a second.

We are of opinion that it was a question of fact for the jury on the evidence, whether the plaintiff had such reason to expect

the hoisting of the spile without warning, and the swinging of the spile in a dangerous way, as to require him in the exercise of ordinary care to watch the operation of the hoisting engine, and look out for himself. They might think that he had reason to expect that the spile would not be hoisted while he was at work over the grating without first giving him warning, or that it would not swing in such a way as to strike him. It cannot be said, as matter of law, that in the performance of his duty under orders from the captain he was obliged to anticipate such a danger, or to rely solely on his own watchfulness to guard against an injury which could only come from the negligence of others. *Magee* v. *West End Street Railway*, 151 Mass. 240. *Davis* v. *New York, New Haven, & Hartford Railroad*, 159 Mass. 532. See also *Thyng* v. *Fitchburg Railroad*, 156 Mass. 13; *Maher* v. *Boston & Albany Railroad*, 158 Mass. 36; *Lynch* v. *Allyn*, 160 Mass. 248.

The questions to the expert, and his answers, were rightly admitted in evidence. There was nothing to show that there was any dispute in regard to the way in which the derrick was equipped, or that the answers of the witness involved any matter of opinion except upon subjects about which he could properly testify as an expert. *Prendible* v. *Connecticut River Manuf. Co.* 160 Mass. 131. *Poole* v. *Deane*, 152 Mass. 587.

*Exceptions overruled.*