### MAURICE POWERS *vs.* CITY OF FALL RIVER.

Bristol. October 27, 1896. — February 27, 1897.

Present: HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Master and Servant — Assumption of Risk — Law and Fact.*

If the superintendent of a gang of men employed by a city in digging a trench for water pipes uses a tripod instead of a derrick in hoisting a very heavy stone out of the trench, and does not have planks put across the trench under the stone

after it has been hoisted above the surface of the ground, so that when the men, under his direction, are engaged in swinging the stone for the purpose of placing it on the ground, the tripod and the stone fall into the trench, carrying with them one of the men who is engaged in steadying a leg of the tripod, and injuring him, in an action against the city for his injury, it cannot be ruled, as matter of law, that the falling of the tripod into the trench was an ordinary risk of his employment, but the question whether he assumed the risk is for the jury.

TORT, under the employers' liability act, St. 1887, c. 270, for personal injuries occasioned to the plaintiff, while in the defendant's employ, by the alleged negligence of the defendant's superintendent. Trial in the Superior Court, before *Bishop*, J., who allowed a bill of exceptions, in substance as follows.

The plaintiff was working for the defendant in its waterworks department at the time of the accident, and had been so employed in picking, shovelling, and drilling from April, 1895, to the time of the accident, which was on June 25, 1895. It also appeared that he had done the same kind of work for five or six months of the previous year. On the day of the accident he was engaged with other workmen in digging a trench for water pipes. This work was done under the direction of one Lynch, who acted as foreman and who did nothing but direct the work. Among other appliances used by the defendant in the progress of the work were sheer poles, which consisted of three stakes about five inches square and fourteen feet and one inch high, joined together at one end and capable of being spread out in the form of a tripod. A piece of iron pipe ran through one of the legs of the sheer pole, forming a handle. The sheer poles were extended across the trench when in use, two legs being on one side and one on the other, and from the apex were suspended blocks and a fall which could be lowered into the trench. While they were in this position the plaintiff was ordered by Lynch to steady the leg of the sheer poles that was on one side of the trench. He did so by taking hold of the iron pipe with each hand, putting all his weight on the handles. The foreman then ordered one of the workmen to chain a stone which was in the trench and to hook it on to a block attached to the sheer poles, and ordered other workmen to hoist. When the stone was hoisted a certain distance, he directed other workmen to swing the stone three times for the purpose of landing it on the

ground, and on the third swing ordered some of the men who had hold of the fall to slack up and lower the stone, when the sheer poles and the stone tipped over into the ditch, carrying the plaintiff with them, and he received the injuries complained of.

The plaintiff testified that he did not have time to let go of the pole and get away; that he did not know there was any danger in holding the pole as he was doing, or that it was liable to fall in that way; and, on cross-examination, that he was performing his work as directed by Lynch.

Michael Garrity, who was employed on the same job at the time of the accident, testified that he had been doing trench work six or seven years; that on the day of the accident he was at work in the bottom of the trench barring out stone; that there was a derrick in use at the trench as well as the sheer poles; that this derrick had also three legs, but that two of them were fastened together by a plank, and it was fitted with a wheel to hoist stone, instead of the men hauling by hand; that the derrick could be moved from place to place by the men; that the derrick could have been moved to the place of the accident with comparative ease; that he had several times seen the derrick in use, and moved from place to place, on that job, under the orders of Lynch; that he had seen the derrick used for lifting out heavy stone; that it was always used for stones of the size of that which was being hoisted at the time of the accident, and he had never before seen an attempt to lift a stone of that size by the sheer poles; that the derrick was the safest, and was steadier and securer than the sheer poles for lifting any kind of rock; that he helped to load this stone on a gear after the accident, and that it was of granite, and it took five men to put it on the gear; and that from where the plaintiff stood holding the sheer pole he could not see the stone down in the trench.

Dennis Norton testified that he had worked in trenches about two years, and during that time had had occasion to see stones of different sizes lifted from ditches; that he was working on this job; that Lynch was in charge of the work, and had fifty men under him; that the stone in question would weigh somewhere between eight and ten hundred pounds; that he had seen the sheer poles used there before, but had never seen them used

for lifting a rock of that size, the derrick being used for that purpose; that he was one of the men who had hold of the tag rope pulling the rock in, and they were pulling it in the ordinary way; that the ditch there was about eight or nine feet deep; and that from where the plaintiff stood holding the sheer pole he could not see the stone down in the trench.

On ·cross-examination, Norton testified that the pull on the third swing is less than the pull on the first, because they have to pull harder to get the rock started; and that it was the drawing on the sheer poles, landing the rock on the bank, which caused them to tip over. In reply to the question, " What was the cause of the accident?" the witness replied, " I don't think the sheer poles were heavy enough for that rock."

Michael Lynch testified, for the defendant, that he had been foreman for the city on this kind of work twenty years; that for sixteen years he had used sheer poles; that he had taken out stones as large as this one, and larger, with them; that he had been accustomed to take out stones with the derrick, the sheer poles, and the tag rope; that this stone was one which it was proper to take out with the sheer poles; that this stone was the only one at that point to take out; that he used the sheer poles to lift out this same stone right after the accident; that at the time of the accident the single leg came over the ditch; that the plaintiff did not come over with it; that he was not on the leg when it went towards the ditch; that he used the derrick for heavy stone and the sheer pole for light stone; and that for a stone weighing one thousand pounds he would use the derrick.

On cross-examination, Lynch testified that the single leg which the plaintiff was holding rested on earth that had been thrown up out of the trench, and was about eighteen inches higher than the two legs on the other side, and they were pulling away from the single leg trying to get the stone between the two legs; that they pulled in obedience to his orders; that the witness saw the stone in the bottom of the trench, as he was standing right over it; and that the plaintiff was doing what the witness told him to do, so far as he knew.

Quin O'Neil, called by the defendant as a witness, testified that he was holding the fall at the time of the accident; that

he was not pulling on it, but holding it still, and the sheer poles did not go into the ditch; that they took out this same stone immediately after with the same sheer poles; that he had worked for the city one year; and that during that time he had seen sheer poles used, and had seen stones as large as that one taken out with the sheer poles.

James Corrigan, called as a witness by the defendant, testified that he was one of the laborers on the job, and this was the largest stone they took out at that spot; that he had worked for the city ten years; that during that time he had seen sheer poles used; and that he had seen stones as large as this one taken out with sheer poles.

Edmond L. Gifford testified, for the defendant, that he had been a contractor and mason, and had worked sheer poles for something like thirty years; and that sheer poles fourteen feet high with legs five inches square were a proper appliance for taking out a stone weighing one thousand pounds.

Robert Nicholson, a master mason of twenty-four years' experience, and admitted to be qualified as an expert in the use of sheer poles, was called as a witness by the defendant and testified on cross-examination as follows:

" *Q.* Do you think that that appliance as it stood there with the single leg resting on loose earth eighteen inches high, and a stone weighing one thousand pounds on there, was a suitable and proper way to hoist? *A.* It is not a suitable way to have the derrick sitting at all.

"*Q.* Shouldn't there be a skid there, something else to help take the stone up? *A.* I can tell you the way I land them.

"*Q.* Yes, sir; go ahead. *A.* If I am using the three legs I generally have stuff there to put under the stone when I get it to the bank.

"*Q.* So that you would not have to swing? *A.* Yes, sir, that is just what ought to be.

"*Q.* That is what ought to have been done here? *A.* Yes, sir."

At the close of the evidence, the defendant asked the judge to rule that there was no evidence which would justify a verdict for the plaintiff. The judge refused so to rule; and the defendant excepted.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*L. E. Wood,* for the defendant.

*J. W. Cummings,* (*E. Higginson* with him,) for the plaintiff.

LATHROP, J.    The work which was going on at the time of the injury to the plaintiff was under the direct supervision and control of a foreman of the defendant, who it is conceded was a superintendent within the meaning of the statute, and there was evidence that his sole duty was that of superintendence.    The plaintiff did precisely what he was told to do, and it is not contended that he was not in the exercise of due care.    There was evidence of negligence on the part of the superintendent in at least two particulars; first, in using the tripod instead of the derrick in hoisting so large a stone out of the trench; and, secondly, in not putting planks across the trench under the stone after it had been hoisted above the surface of the ground.    If this had been done, the stone could have been lowered to the planks, and removed without further use of the tripod.    The swinging in of the stone to the surface of the ground would then have been unnecessary, and the catastrophe would have been avoided.

The principal contention of the defendant at the argument in this court was that the plaintiff took the risk.    He undoubtedly took the ordinary risks of his employment, but it cannot be said, as matter of law, that the falling of the tripod into the trench was an ordinary risk.    It was for the foreman to determine which appliance to use, the tripod or the derrick.    The plaintiff had a right to rely to some extent upon the experience of the foreman, even if he knew all the conditions, which does not clearly appear.    On all the evidence we are of opinion that the question whether the plaintiff assumed the risk was for the jury: *Haley* v. *Case,* 142 Mass. 316.    *Lang* v. *Terry,* 163 Mass. 138. *Coan* v. *Marlborough,* 164 Mass. 206.    *Norton* v. *New Bedford,* 166 Mass. 48.

*Exceptions overruled.*