ROSE RAFFERTY, administratrix, *vs.* HARRY P. NAWN.

Suffolk. November 10, 1902. — January 9, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, & HAMMOND, JJ.

*Negligence*, Employer's liability, Contributory. *Evidence*, Materiality, Experts.

In an action for the death of the plaintiff's intestate caused by the falling of a bank of earth which the intestate was undermining with a pick, it appeared, that the method of excavating used was unsafe unless the men at work were watched and warned when the bank was about to fall, that a superintendent was in the habit of giving such warning, and that when the accident happened this superintendent had left his post and had gone to a point forty-five feet distant, without telling any one he was going away or giving any warning. *Held*, that there was evidence of negligence of the superintendent to go to the jury.

It is not, as matter of law, want of due care for a laborer working with a pick on a horizontal undercutting, intended to make a section of a bank of earth fall, to work on one or both knees instead of on his feet, in order to use his pick more effectively.

A laborer working with a pick on a horizontal undercutting, intended to make a section of a bank of earth fall, does not assume the risk of a superintendent failing to give a customary warning when the earth is about to fall.

If a preliminary question, too broad in form, is narrowed to a material inquiry by the question to which it leads, it cannot be objected to as calling for immaterial matter.

Where an expert has heard the evidence as to the way in which certain work was being done at the time of an accident, and there is no conflict in regard to it, it is not error, as matter of law, for the presiding judge to allow the expert to give an opinion founded on the evidence as heard by him, instead of requiring a hypothetical question.

TORT, under St. 1887, c. 270, § 1, cl. 2, as amended by St. 1892, c. 260, § 1, by the administratrix of the estate of Thomas Rafferty, also his widow, for the conscious suffering of the intestate from an injury sustained while in the employ of the defendant, and for his death. Writ dated December 15, 1896.

At the trial in the Superior Court before *Sherman*, J., the jury returned a verdict for the plaintiff in the sum of $5,000, apportioned $1,250 for conscious suffering and $3,750 for the death. The defendant alleged exceptions.

*T. W. Proctor*, for the defendant.

*A. T. Johnson*, for the plaintiff.

LATHROP, J. The accident in this case occurred on April 15, 1896, and was owing to the fall of a bank of earth, upon which the plaintiff's intestate was at work, on Blue Hill Avenue in Boston. The defendant was the contractor for doing the work, and Rafferty was in his employ as a common laborer. One Scott was foreman of the job, and no question is made as to his being a superintendent within the St. of 1887, c. 270, § 1. The face of the bank of earth was from ten to thirteen feet high, and was nearly perpendicular. The method employed to bring the earth down was to make a horizontal undercutting of that section of the bank which it was desired to bring down, and also the cutting of a perpendicular chamber at one end of the section. Rafferty was down on one or both knees, driving his pick into this undercutting, when the bank fell. There were others at work about there. The face of the bank had been exposed to the weather since the preceding February. It was more or less soft. There was some sand in it back of the face, and there was water in the bank.

The principal question in the case is whether there was any

evidence of negligence on the part of Scott, the superintendent of the work. We are of opinion that there was. There was testimony from several witnesses that Scott was in the habit of giving warning when the bank was about to fall. He was there that morning, watching the work and the men. While Scott was so engaged, a paymaster of the defendant drove up to a point upon the road about forty-five feet distant from the place where the men were at work, and Scott, without telling any one that he was going away or giving any warning, walked to the paymaster, and just after he reached him the bank of earth fell and did the injury complained of. There was evidence in the case that the method of excavating by undercutting and making a chamber was unsafe unless the men were watched and warned. There was also evidence which showed that the foreman understated the depth of the undercutting, and that the jury might have found that the depth was such as the foreman himself testified he considered dangerous. We are of opinion that the question of the negligence of the superintendent was for the jury. *Lynch* v. *Allyn*, 160 Mass. 248.

The only ground upon which it is argued that the plaintiff's intestate was not in the exercise of due care is that he was on one or both knees while using his pick on the bank, and because Scott, who was a witness for the defendant, testified that there was no necessity for him to be on one knee. But the reason he gives is that there would be no object in opening an undercut so near his feet, because it would make it inconvenient for him and make double labor. Scott does not state any fact to show that the intestate was not in the exercise of due care, and if he had stated any such fact the jury were not bound to believe him. The question whether the intestate was in the exercise of due care was for the jury.

The defendant contends that the intestate assumed the risk. Although he assumed the risks ordinarily incident to the work he was doing, yet, if the jury believed the witnesses for the plaintiff, who testified that it was customary to give warning when the earth was about to fall, the intestate had a right to assume that such warning would be given. *Davis* v. *New York, New Haven, & Hartford Railroad*, 159 Mass. 532. *Lynch* v. *Allyn*, 160 Mass. 248. *Carroll* v. *New York, New Haven, &*

*Hartford Railroad, ante,* 237. The case as disclosed by the evidence is not one where a man is expected to look out for himself. The question was therefore for the jury.

There were several objections made to the admission of evidence at the trial, only two of which were relied on at the argument before us. The first of these relates to a question put to one Burke, a contractor, who was present at the time of the accident. He had testified, without objection, that he had seen there, several times before, the earth brought down by this method of undercutting and chambering. He was then asked this question: "Now you will state what you have seen done before about the banks being let down." The attention of the witness was called by the judge to the fact that the question related to the defendant's business only. The witness then answered: "I have seen them undermined the same way as they have been there." There was a general objection to the question and answer. The defendant contends in argument that the question was not calculated to bring out, nor did the answer show, whether the character of the banks inquired about were in any respect similar to the bank in question, whether the inquiry was directed to any particular time, or whether Rafferty was employed when such method was used, so that the method might have been called to his attention.

We see no objection to the question and answer. The question was merely preliminary to the question whether he had heard anything said by Scott on other occasions when banks were being brought down in this same way, on this job. This confined the question to the particular work which was then in progress.

The remaining objection to evidence relates to questions and answers put to Carroll, an expert witness for the plaintiff. It is apparent from the bill of exceptions that some question had been put to the witness before he had shown by his testimony that he was qualified to testify as an expert, for immediately after it appeared that he was qualified, the judge said: "Now, I think you may ask him, whether it would be a reasonably safe and prudent way to do this work, without having somebody to watch, if you want to." This question was then put: "Will you kindly answer that question whether this bank could be

chambered and undercut ? " The witness answered, " No." The judge then asked this question : " To do it the same as it has been described to have been done, without having somebody to watch and give notice ? " The witness answered, " No."

At the time the witness Carroll was examined, there was no conflict of evidence as to the way in which the work was being done, or as to any other matter of fact, and it is apparent that the witness had heard the evidence. While it may be the better practice to put a hypothetical question, we cannot say that the judge erred, as matter of law, in allowing the questions to be put. No objection was made to the form of the questions. The case comes fairly within *Hunt* v. *Lowell Gas Light Co.* 8 Allen, 169, 172, and also within the exception stated in *Stoddard* v. *Winchester*, 157 Mass. 567, 575, where it is said : " An expert witness cannot be asked to give an opinion founded on his understanding of the evidence, against the objection of the other party, except in cases where the evidence is capable of but one interpretation." See also *Hand* v. *Brookline,* 126 Mass. 324 ; *Lang* v. *Terry,* 163 Mass. 138, 143.

*Exceptions overruled.*