JOSEPH VECCHIONI, administrator, *vs.* NEW YORK CENTRAL
AND HUDSON RIVER RAILROAD COMPANY.

MARIA P. PIERMARINI *vs.* SAME.

Suffolk.   December 14, 1905. — March 2, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Negligence.   Railroad.*

In an action under R. L. c. 111, § 267, by the administrator of the estate of an employee of a railroad company against the company, for causing the death of the plaintiff's intestate under circumstances alleged to be such as would have

entitled the intestate to maintain an action for damages against the defendant if death had not resulted, the plaintiff cannot recover if the death of his intestate was caused by the negligence of a fellow servant although such fellow servant was entrusted with and exercising superintendence and his sole and principal duty was that of superintendence.

In an action under R. L. c. 106, § 73, by the mother of an employee of a railroad company, who was his next of kin and dependent upon him for support, against the company for causing the instant death of the plaintiff's intestate through the alleged negligence of a person entrusted with and exercising superintendence, it appeared that the intestate with the others of a gang of ten men was working on a track over which trains frequently were passing and that a person, who could have been found to be entrusted with and exercising superintendence and whose sole or principal duty was that of superintendence, stood near the men with a time table and a watch and would tell the men to jump when a train was about due, that this superintendent called six of the men and took them away with him to unload a car about half a mile distant, and left four men including the plaintiff's intestate without any one to warn them of approaching trains, that the intestate started to go with the superintendent but the superintendent sent him back, and the four men continued to work on the track until an express train came along and instantly killed the plaintiff's intestate and another of the workmen. *Held,* that a verdict should have been ordered for the defendant, as it could not be found that the workmen at the time of the accident relied upon any expected warning from the superintendent, and that by continuing to work without any one to give them warning the workmen either assumed the obvious risk of being struck by passing trains or were negligent in failing to take any precaution to guard against such an accident.

SHELDON, J.    These are two actions brought to recover ·for the death of two trackmen, Sabbationo Ruggero and Antonio Piermarini, who were struck by a regular passenger train on the defendant's railroad while they were at work repairing the track. Both men began work for the defendant on the first day of April, 1902, and the accident occurred nine days later.    They were members of a gang of ten men which worked under the charge of a foreman named Gahan, on a section in Brighton two miles long, which included besides four main tracks all the tracks used in connection with the defendant's shops at Allston, the cattle yards at Brighton, and the Brighton abattoir.    There was evidence that during all the time these two men were at work on the tracks, until the day of the accident, Gahan stood near by the men with a time table and a watch, and would tell the men to jump when a train was about due.    He directed them where to work and what to do.

On the morning of April 10, Gahan was at work with the gang on track number 2, between the Everett Street and Market Street bridges, opposite the end of a paint shop and about seven

hundred feet east of the Brighton station.   From this point the view westerly under the Market Street bridge is unobstructed for about a thousand feet.   There were four main tracks here, and trains ran frequently on all of them, sometimes two trains in a space of two or three minutes.   There was evidence that on this morning the atmosphere was close, with a little rain and some fog, and that smoke from the engines hung heavily about the tracks, so as sometimes to obscure the view of the men there.

Shortly after nine o'clock, Gahan called to six men of this gang, each by name, and took them away with him to unload a car which was about half a mile distant from the place where they had all been at work up to that time.   He left four men, including the two who were afterwards killed, in this place.   He gave no directions to the four men he left, and did not tell them where he was going or how long he should be gone ; he gave them no instructions, but left them at work on the track.   One of the two men killed, Piermarini, started to go with Gahan, but Gahan sent him back ; and one of the plaintiffs' witnesses testified that the four men who were left saw Gahan and the six men who were with him go away.   There was no direct or circumstantial evidence at variance with this.   The four men who were left continued working on this track until the accident happened.   Ruggero and Piermarini were struck by an express train from the west, and were both instantly killed.   The jury found a verdict for the plaintiff in each case ; and the first and main question raised by the defendant's exceptions is whether verdicts should have been ordered for the defendant.

The first case, that brought by Vecchioni as administrator of the estate of Ruggero to recover for the death of his intestate, is brought under R. L. c. 111, § 267.   The plaintiff's contention is that Ruggero, if he had lived, would have had a right of action against the defendant because his injury was due to gross negligence on the part of Gahan ; that Gahan was entrusted with and exercising superintendence, and that his sole or principal business was superintendence, within the meaning of R. L. c. 106, § 71, cl. 2; that this negligence of Gahan is to be regarded as negligence of the defendant itself, because the defendant had stationed him to watch for approaching trains and warn

the men under his charge, and this fairly implied that when the men were placed at work for the defendant in so dangerous a place, it would take sufficient precaution for their safety; and so that when Gahan left the men unprotected on the tracks this was a failure in the defendant's duty; and that the plaintiff accordingly has a right to maintain this action under the provision of R. L. c. 111, § 267, that "if an employee of a railroad corporation, being in the exercise of due care, is killed under such circumstances as would have entitled him to maintain an action for damages against such corporation if death had not resulted, the corporation shall be liable in the same manner and to the same extent as it would have been if the deceased had not been an employee." But the trouble with the plaintiff's argument is that his right of action, by the express terms of the statute last cited, depends upon the right of his intestate to maintain an action under the provisions of R. L. c. 106, § 71, the employers' liability act; and it is now settled that the latter statute cannot be invoked to relieve a case brought under R. L. c. 111, § 267, from the defence that the death was caused by the negligence of a fellow servant. *Dacey* v. *Old Colony Railroad,* 153 Mass. 112. *Clark* v. *New York, Providence & Boston Railroad,* 160 Mass. 39. The plaintiff does not contend, and apparently has no ground for contending, that he can maintain his action upon any ground other than the alleged negligence of Gahan. A verdict should have been ordered for the defendant; and because this was not done the defendant's exceptions in this case must be sustained.

The second case is brought by Piermarini's mother, who was his next of kin and dependent upon him for support, to recover for his death without conscious suffering, under R. L. c. 106, § 73. The jury were allowed to find a verdict for the plaintiff on the ground that the deceased was himself in the exercise of due care; that his death was due to negligence of Gahan in going away and leaving the men without his supervision, and that Gahan was a superintendent within the meaning of the statute just cited.

There was undoubtedly evidence that Gahan was entrusted with and was exercising superintendence, and that his sole or principal business was that of superintendence. There was also

evidence that Gahan had been accustomed to warn the members of his gang of the approach of trains, and it might have been found that they had learned to expect and to rely upon such a warning.   Accordingly it is argued in this case that Piermarini well might have been found to have been himself in the exercise of due care and not to have assumed the obvious risks of working upon the tracks where he knew that trains were passing so frequently ; and reliance is placed upon the case of *Davis* v. *New York, New Haven, & Hartford Railroad,* 159 Mass. 532, in which it was held that one who was engaged in work upon a railroad track under substantially the same circumstances as in the case at bar had a right to rely upon the fact that it was the duty of the foreman of the gang to warn him of the approach of a train, and might recover against the railroad for an injury caused by the foreman's failure to do so.   See also *Mahoney* v. *Bay State Pink Granite Co.* 184 Mass. 287 ; *Rafferty* v. *Nawn,* 182 Mass. 503 ; *Lang* v. *Terry,* 163 Mass. 138, 143 ; *Lynch* v. *Allyn,* 160 Mass. 248 ; *Maher* v. *Boston & Albany Railroad,* 158 Mass. 36. And it is contended that the jury had a right to find that Gahan's departure, leaving these four men to work by themselves, without giving them any directions, and leaving no one to give them the warnings for which he knew or ought to have known that they relied on him, was an act of negligence in the exercise of superintendence.   *Rafferty* v. *Nawn,* 182 Mass. 503.   *Scullane* v. *Kellogg,* 169 Mass. 544.   *Lynch* v. *Allyn,* 160 Mass. 248.

But in the case at bar it could not rightly have been found that these men at the time of the accident relied upon any warning from Gahan.   There was direct evidence put in by the plaintiffs that they all knew of his departure and knew that they were left alone to look out for themselves ; and there was no evidence to the contrary.   It appeared that Piermarini himself started to go away with Gahan, but was sent back by the latter. They continued their work upon the track, knowing the manifest danger of their situation, knowing that they now must depend upon their own senses for their protection ; and under these circumstances, if they did not assume the obvious risk, which they could not have failed to appreciate, of being struck by passing trains, at least there is no evidence that they took

any precaution or exercised any care whatever to guard against the accident which did occur and the likelihood of which they were bound to foresee. The case comes under the rule of *Morris v. Boston & Maine Railroad,* 184 Mass. 368; *Lynch* v. *Boston & Albany Railroad,* 159 Mass. 536; *Tumalty* v. *New York, New Haven, & Hartford Railroad,* 170 Mass. 164. If there was a fog at this time or if the view was temporarily obstructed by smoke, or if the noise of work going on or of switching engines overcame the noise of approaching trains, these circumstances were all obvious to the men and called for the exercise of increased vigilance on their part. The circumstances in the case of *Smith* v. *Baker,* [1891] A. C. 325, relied on by the plaintiff, are so different from those now before us that it cannot be regarded as bearing upon the case at bar.

Under the rules adopted in this Commonwealth a verdict should have been ordered for the defendant in this case also.

The conclusions at which we have arrived on the first question raised in these cases make it unnecessary to consider the other exceptions. In each case the order must be

*Exceptions sustained.*

*W. Hudson,* (*G. P. Furber* with him,) for the defendant.
*P. O'Loughlin,* (*A. L. Farrell* with him,) for the plaintiffs.