FRANCIS SANTORE *vs.* NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY.

Worcester.    October 4, 1909. — October 21, 1909.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Negligence,* Railroad, Employer's liability.    *Custom.    Evidence,* Relevancy.

Discussion by HAMMOND, J., of the decisions of this court with regard to the extent to which a person may rely upon the customary warnings of the approach of a car or engine.

At the trial of an action under R. L. c. 106, § 71, cl. 3, against a railroad company by a person employed by it and injured by being run upon by an engine in a

roundhouse, it appeared that the plaintiff for some time before the accident had worked in and about the roundhouse and was perfectly familiar with it, that just before the accident he was at work shovelling ashes from an ashpit between the rails of one of four tracks which were in one section of the roundhouse and were not separated from one another by any partition, that the track, under which the pit was, was next to a wall which was on the left hand side of the section as one faced the roundhouse, that the pit was about three and a half feet deep and about eight feet long, the side toward the front of the roundhouse being about thirty feet from a turntable ; that the plaintiff was a strong, healthy, active man forty-one years of age and of good eyesight and hearing, and that the accident happened in the late afternoon of a day in November, when it was dark. There was evidence tending to show that there was a custom in the yard of the defendant, of which the plaintiff was informed, that, whenever an engine was backed from the turntable into a stall of the roundhouse after dark a bell was rung and a light was placed upon the tender, that when the defendant's foreman placed the plaintiff at work in the ashpit, he warned the plaintiff to look out for the engines, telling him that when they " were to come they would ring the bell," that the plaintiff was right handed, and, as he shovelled from the ashpit, it being necessary for him to throw the ashes on the side of the pit away from the wall, it was easier for him to, and he did, work with his back toward the turntable, throwing the ashes out on his right side and turning his body and head partly as he did so. While he thus was working, an engine with no light on its tender and without its bell being rung backed in on the track under which he was working, he noticed it just before it reached him, sprang part way out of the pit, caught his leg and was injured. He testified that while he was working before the accident, " I always looked out with my eyes and listened with my ears for the engines." The presiding judge ordered a verdict for the defendant. *Held,* that the verdict was ordered wrongly, since the question of the due care of the plaintiff was for the jury, as it could not be said as matter of law that the plaintiff did not make a reasonable use of his eyes and ears, or that he must have looked carelessly.

Where, at the trial of an action against a railroad company under R. L. c. 106, § 71, cl. 3, by an employee, who alleged that, as he was working in an ashpit in a roundhouse of the defendant, after dark, he was run upon by an engine of the defendant by reason of negligence on the part of the engineer, there is evidence tending to show a custom of the defendant to display a light on the tenders and to ring the bell of engines backing into the roundhouse under such circumstances, but that no light was displayed and no bell was rung on the engine which ran upon the plaintiff as it backed into the roundhouse, the plaintiff should be permitted to answer the question, " Did you rely on the ringing of the bell there [while he was in the ashpit] to notify you ? "

TORT for personal injuries received by the plaintiff, while in the employ of the defendant as a shoveller in an ashpit in its roundhouse, by being run upon by an engine backing into the roundhouse. Writ in the Superior Court dated February 8, 1908.

The case was tried before *Bishop,* J. The facts are stated in the opinion. At the close of the evidence for the plaintiff, the

presiding judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*W. Thayer*, (*G. A. Drury & F. A. Walker* with him,) for the plaintiff.

*R. A. Stewart*, for the defendant.

HAMMOND, J.    While at work as a common laborer, shovelling ashes from an ashpit situated between the rails of the track in stall number four of the defendant's roundhouse, the plaintiff was struck by an engine and injured.    The roundhouse was divided into three sections of four stalls each, the sections being separated by brick walls; but there were no walls between the stalls of a section.    Upon one side of stall number four was the sectional wall between the first and second sections.    In each stall was an ashpit.    The pit in which the plaintiff was at work was about three and one half feet deep; the width was equal to the space between the rails of the track and its length was at least more than eight feet and the front end was about thirty feet from the turntable.    The plaintiff was struck by an engine which had come from stall number two, which is in the same section with stall number four.    It had been run upon the turntable and, after the proper adjustment of the table, was backing to its berth in number four, over the pit in which the plaintiff was at work.

The main question is whether there was evidence of due care on the part of the plaintiff.    The accident occurred between five and six o'clock in the afternoon of November 3, 1907.    It was dark.    There was evidence that there were lights in the roundhouse so that the plaintiff could see to work, but the plaintiff testified that they were not very bright.    The plaintiff was at work from five to eight feet from the front end of the pit, with his back toward the turntable.    At the trial the witness gave an illustration of the manner in which he shovelled, " which indicated he was right handed, that is, he had his right hand on the lower part of the handle of the shovel and his left hand at the top, and as he raised the ashes on the shovel to throw them up out of the pit he swung his body and head around to his right."    The evidence tends to show that these were the physical conditions under which, and this was the manner in which, the work was done.

The plaintiff had worked in and about the roundhouse a great deal and was perfectly familiar with it. Ten days before the accident, he had been hired to shovel out ashes and had been engaged in that work more or less every day between that time and the day of the accident. Upon his own testimony he was at this time forty-one years old, with good eyesight and hearing, " strong and active and able to do his work as well as any' man, quick upon his feet and perfectly well in every way "; and he had worked with the shovel many years.

This strong, healthy, active man, while engaged in a work in which he had had great experience, at a place and under conditions with which he was perfectly familiar, was struck by an engine coming, so far as appears, with only the usual speed of an engine backing from the turntable into its berth in the roundhouse. In his own words, " I happened to look around and I spotted the engine right almost on top of me and as I jumped out of the pit I caught my leg." He was then about seven feet back from the front end of the pit, and was working in the manner described, with his back to the engine, although he knew that an engine was likely at any time to come into that berth.

There was evidence that whenever an engine was backed from the turntable into a stall the bell was rung, and in case of darkness a light was placed upon the tender; and the plaintiff had been informed of this custom. There was also evidence that neither of these warnings were given on this occasion.

The extent to which a person may rely upon customary warnings of the approach of a car or engine has arisen in many cases; and it depends in part upon the nature of the warning and in part upon the other circumstances. In the leading case of *Davis* v. *New York, New Haven, & Hartford Railroad*, 159 Mass. 532, it was held that when it was the duty of the foreman of the gang to warn the plaintiff of the approach of the train, a jury might properly find that the plaintiff, whose work required him to bend over, might in the exercise of due care work with his back to the direction from which the train was coming, and might rely upon the foreman to do his duty. Holmes, J., in giving the opinion of the court, used the following language: " The defendant had put the plaintiff in a position in which the more closely he at-

tended to his duty the less he was able to be on the watch, and had put a foreman there for the purpose of warning him. Under such circumstances the jury might well say that the plaintiff was justified in relying on the foreman's doing what the defendant admitted that he was bound to do, and said that he did. A man alongside another in this way can make sure of his warning being understood. The case is not one where the only warning relied on must come from the train." And in *Edgar* v. *New York, New Haven, & Hartford Railroad*, 188 Mass. 420, it was held that a brakeman engaged in coupling cars could rely exclusively upon the assurance of the conductor that he would look out for him. See also the same principle illustrated in *Dunphy* v. *Boston Elevated Railway*, 192 Mass. 415; *Rafferty* v. *Nawn*, 182 Mass. 503; *Scullane* v. *Kellogg*, 169 Mass. 544; and *Lang* v. *Terry*, 163 Mass. 138. Again, the circumstances may be such that from the nature of the plaintiff's work he cannot well look out for the approach of a train and therefore is justified in relying largely if not entirely upon the warning by the bell or whistle. *Mears* v. *Boston & Maine Railroad*, 163 Mass. 150; *Carroll* v. *New York, New Haven, & Hartford Railroad*, 182 Mass. 237. See also *Cloutier* v. *Grafton & Upton Railroad*, 162 Mass. 471; *Meadowcroft* v. *New York, New Haven, & Hartford Railroad*, 193 Mass. 249. And see a similar principle applied in the case of a defective tell-tale near a bridge. *Maher* v. *Boston & Albany Railroad*, 158 Mass. 36.

But in general a person is not justified in relying wholly upon the signals which ought to be given from the train. He can rely upon them to a certain extent, but he is not in general relieved from a reasonable use of his eyes and ears in order to ascertain whether a train is approaching. In the case of grade crossings, for instance, it has been frequently held that a person is not in the exercise of due care who attempts to cross a railroad track without taking seasonable precaution to assure himself by actual observation that there is no danger from approaching trains, and that he cannot properly rely alone upon his sense of hearing, but must use his sight as well if it is reasonably practical to do so. *Fletcher* v. *Fitchburg Railroad*, 149 Mass. 127, and cases cited. *Tyler* v. *Old Colony Railroad*, 157 Mass. 336. *Chase* v. *Maine Central Railroad*, 167 Mass. 383, 387, and cases cited. Where however

there is a state of things actively indicating that no train is approaching and amounting in substance to an invitation to cross, it has been held that a person is justified in relying upon such an implied assurance. See *Clark* v. *Boston & Maine Railroad*, 164 Mass. 434, where the flagman nodded to pass ; and *Conaty* v. *New York, New Haven, & Hartford Railroad*, 164 Mass. 572, where gates which had been lowered were partly raised.

This general rule concerning the use of the senses of sight and hearing is applicable to persons who are employees upon the railroad. They are not in general excused from a reasonable use of both these senses. *Morris* v. *Boston & Maine Railroad*, 184 Mass. 368, and cases cited. In that case it was held that a section hand was not relieved from looking out for trains, and that he could not rely wholly upon the ringing of the bell and the sounding of the whistle ; and accordingly that the plaintiff, although at work shovelling snow from the track at a time when "the wind was blowing very hard, and the snow was drifting and so blinding that one could hardly see," and who looked in only one direction for trains was not in the exercise of due care as to a train coming from the other direction and by which he was injured. See also *Blute* v. *New York, New Haven, & Hartford Railroad*, 195 Mass. 395 ; *Byrnes* v. *New York, New Haven, & Hartford Railroad*, 195 Mass. 437 ; and *Skinner* v. *Boston & Maine Railroad*, 200 Mass. 422. *Dolphin* v. *New York, New Haven, & Hartford Railroad*, 182 Mass. 509.

It becomes necessary to examine a little more closely into the circumstances surrounding the accident in question. The plaintiff testified that when Connors, the foreman, first set him to work at the ashpit, he (Connors) said to him : " Go down and get the ashes out of the pit and look out for the engines." " When the engines were to come they would ring the bell." That Connors said that to him more than once ; that on the night of the accident he said : " Go get the ashes out of the pit and look out for the engine because they ring the bell before they come in." He further testified that it was the custom to ring the bell and to display a light upon the tender. There was no statement by Connors that he or anybody else would stand by to give the plaintiff warning of the approach of the engine. Nor did the plaintiff understand that he would. Nor did Connors undertake that the

plaintiff should be warned.  He only stated a general custom of warning which already was known to the plaintiff.  So far as respects the nature of the warning it is the ordinary case of a customary warning.  The work which the plaintiff was doing required no intense application of his mental powers.  Nor did it place him where he could not see the engine as it approached. It is true that he seems to have been what the record calls " right handed," and it is argued that since by reason of the nearness of the section wall upon one side of the pit he could not place the ashes upon that, and that being what the record calls " right handed " it was easier for him to work with his back than with his face to the turntable.  But it is manifest that, whether right or left handed, he could have shovelled easily enough with his face to the engine.  His work did not require him to stand with his back to the engine.  Nor was there anything to inter- fere with his sight of the turntable or of the engine on its way to the stall.  In a word, there was nothing either in the nature of the warning customarily given, or in the nature of his work, or in his surroundings, which brought him out of the general rule. He must be held to a reasonable use of his eyes and ears to pro- tect himself from the engine.

Notwithstanding all this we think that the question of his due care was for the jury.  He testified that, although he was aware of the custom to give the usual warnings of the approach of the engine, he made use of his eyes and ears to protect himself from it.  In answer to the question, " While you were working what did you do to look out for the engines," he testified : " I always looked out with my eyes and listened with my ears " ; and he further testified that just before he was hurt he was listening for the bell.  It is true that he did not indicate the manner in which he used his eyes ; but from his statement that he always " looked out " with his eyes the jury might fairly infer that he frequently looked in the only direction from which the engine would come.  Indeed his description of the manner in which he shovelled the ashes, taken in connection with his statement as to looking, might indicate that as he turned his face towards the right in throwing the ashes out of the pit he could and naturally did frequently turn his head more to the right so as to be able to see what was coming upon the track from the turntable.  There

was nothing in the nature of his work which would prevent him from looking frequently, without any substantial interruption of the work.

In view of the fact that he had a right to rely to some extent upon the customary warnings, it cannot be said as matter of law upon the evidence that he did not make a reasonable use of his eyes and ears. How much and how often he looked and listened, and whether he complied in these respects with the care legally exacted of him for his own protection, were questions for the jury.

Nor upon this evidence can it be ruled that the circumstances show as matter of law that if he had looked he must have looked carelessly. It must be remembered that he was at work but a few feet from the turntable. The passage of the engine from the turntable to the ashpit would consume only a few seconds, and it is possible that even if he had looked frequently and, as the jury might find, as frequently as common prudence, in view of the customary signals, would seem to have dictated, still the engine came between the times of looking. The principle stated in *Fitzgerald* v. *Boston Elevated Railway*, 194 Mass. 242, is not necessarily applicable to a case like this.

The question of the negligence of the engineer was for the jury; and we do not understand the defendant to argue to the contrary.

The case should have been submitted to the jury on the second count.*

The question whether the plaintiff relied upon the ringing of the bell † should have been admitted. It had a bearing on his case.

*Exceptions sustained.*

---

* The second count was under R. L. c. 106, § 71, cl. 3, and alleged negligence of a person in charge of a locomotive engine of the defendant.

† The question, which was excluded by the presiding judge, was, " Did you rely on the ringing of the bell there to notify you? "