PATRICK J. BLUTE vs. NEW YORK, NEW HAVEN, &
HARTFORD RAILROAD COMPANY.

Suffolk. December 13, 1906. — May 15, 1907.

Present : KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Negligence. Railroad.*

If a track man in the employ of a railroad company, who is one of a gang of six
men in charge of a foreman, when he is working alone digging out the snow on
a track at a place where trains are likely to come at any time, turns his back
upon the station, about half a mile away on a straight track, from which all trains
come upon that track, and fails to look in that direction for at least three or four
minutes, and then is struck by a train, he is not in the exercise of due care, and
it is no excuse for his negligence that he was not warned of the approach of
the train by the foreman who was directing the work of the other men of the
gang at a point three hundred and fifty feet farther away than the plaintiff was
from any train approaching on that track.

TORT under the employers' liability act and at common law
for injuries received by the plaintiff on January 25, 1904, while
employed by the defendant as a track man. Writ dated April
14, 1904.

In the Superior Court the case was tried before *Bishop,* J.
At the time the plaintiff was injured his work was that of a track
man between Roxbury Crossing and the Massachusetts Avenue
bridge. At that point the railroad runs about north and south.
There are four tracks, two outbound and two inbound, the out-
bound tracks being upon the right hand side as one goes from
Boston to Forest Hills. Trains coming over the inbound tracks
are from Providence, New York and Forest Hills. Express
trains come about every fifteen or twenty minutes; trains are
likely to come at any time. The point at which the plaintiff
was injured was almost directly opposite Chickering tower and
was upon the more easterly of the two inbound tracks. He was
struck by a train coming into Boston.

On page 396 is a reduced copy of a plan which was used at
the argument before this court and which is referred to in the
opinion.

The plaintiff's work consisted of looking after the tracks.

He had to pull spikes, put in new rails, pull out old ones, clean snow off the wires and in general keep the tracks in good condition. He had been working for the defendant for about two months. He worked in a gang consisting of six men, who were under the direction of a foreman named McAvoy. It was a cold, clear day and there were about six or seven inches of snow on the ground. The men were engaged in cleaning the tracks and the signal wires. The plaintiff was digging out the snow alone and there was no one helping him on that work. He testified, "I was doing the work alone at that place." McAvoy

was with a gang, consisting of three or four men, who were driving back rails at the crossover and he was seeing that they were doing their work at that place. The plaintiff had been working on the wires for about twenty or twenty-five minutes before he was struck. McAvoy with the extra gang was at the crossover. The distance from Chickering tower to the crossover was about three hundred and fifty feet. There was still another extra gang farther toward Boston. The plaintiff testified: "The last stop that the train made was at Roxbury Crossing. It was a regular train that usually came about that time. I had a clear, unobstructed view way up the track to Roxbury Crossing for about half a mile, a straight track. It was a pretty clear day. There were no other trains around there that I saw at that time. My back was turned in the direction from which the train was likely to come on that track and I had not looked toward Roxbury for at least three or four minutes. I had seen McAvoy a minute before that, about a minute before

I looked around.  I saw McAvoy half a minute before I was struck."

The plaintiff further testified that, when he went to work, McAvoy had told him that he must look out for the trains and he always did look out for himself, particularly when he was any distance away from McAvoy.  Subject to the defendant's exception, the following question was put: " Upon whom else did you rely besides yourself, your own senses, to notify you of the approach of trains when your back was toward the direction from which a train was to be expected? "  The plaintiff answered, " I relied upon Mr. McAvoy and the ringing of bells and the sounding of whistles."

One Haggerty, a witness called by the plaintiff, testified that he was a section man and at the time of the accident was working north of the plaintiff.  McAvoy, with the other gang, was between him and the plaintiff, who was at a point three hundred and fifty feet away from McAvoy.  McAvoy and the other men were adjusting the switches, that is, knocking the rails back into place, and it was McAvoy's business to determine how far each rail should be knocked back.  The instructions of McAvoy to the men were to look out for themselves.  It was a busy place; trains were likely to come at any time in both directions, passenger trains, express trains, extra trains and shifters.  Sometimes McAvoy would send one man, sometimes two, away from him ; it depended entirely upon the kind of work that was to be performed.  Very often he would send one if the work was such as was being performed by the plaintiff, and this one would have to look out for himself.  He saw the train at Roxbury Crossing.  The witness stated that he did not hear a whistle or a bell sounded.  It did not appear that there was any rule requiring an engineer to sound a whistle or a bell at that point.

At the close of the plaintiff's evidence the judge ordered a verdict for the defendant ; and the plaintiff alleged exceptions.

*J. H. Vahey*, (*P. Mansfield* with him,) for the plaintiff.

*J. L. Hall*, for the defendant.

HAMMOND, J.  It would serve no useful purpose to rehearse in detail the evidence in this case.  There was no evidence of the due care of the plaintiff.  It is plain that he did not himself

keep proper watch for the approach of the train by which he was struck. He attempts however to excuse himself upon the ground that he relied upon McAvoy the foreman to warn him. But this is unavailing. The plaintiff testified that for " probably twenty-five minutes " he had been at work at the place of the accident, and that during the whole of that time he had been separated from the rest of the gang who were at work under the immediate supervision of McAvoy at a place shown by the plan to be at least three hundred and fifty feet from the plaintiff. The plaintiff was at work upon the inward track and the trains running upon that track approached him from the direction of Roxbury, while McAvoy was upon the opposite side of him. Thus McAvoy was three hundred and fifty feet farther away from any inward approaching train than the plaintiff was, and was in charge of a gang of men then at work, or, to use the language of the plaintiff, " was seeing that they were doing their work." Under these circumstances it is plain that McAvoy could not properly be relied upon by the plaintiff to give warning of approaching trains, and that the situation was known to the plaintiff. It was the duty of the plaintiff under the circumstances to look out for himself and in doing so he could not rely upon any expected warning by McAvoy. The case must stand with *Lynch* v. *Boston & Albany Railroad*, 159 Mass. 536, and *Vecchioni* v. *New York Central & Hudson River Railroad*, 191 Mass. 9, and other similar cases.

*Exceptions overruled.*