THOMAS CARROLL vs. LYMAN D. WILLCUTT.

Suffolk.　January 25, 1895. — March 1, 1895.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Personal Injuries — Employers' Liability Act — Negligence — "Ways, Works, or Machinery" — "Superintendence" — Law and Fact.*

If there is no defect in the material, plan, or construction of a staging, the presence of a stone upon it, by the falling of which personal injuries are occasioned to a workman, is not a defect in ways, works, or machinery within the meaning of St. 1887, c. 270.

While, in an action for personal injuries occasioned to the plaintiff by the falling upon him of a ledge stone from a staging near which he was working, the jury might have found that the sole or principal duty of the defendant's foreman was that of superintendence, they were rightly directed to return a verdict for the defendant if the evidence did not justify a finding that the foreman was negligent in not discovering that the ledge stone was so placed as to be liable to fall.

TORT, for personal injuries occasioned to the plaintiff while in the defendant's employ. The declaration contained three counts, the first two under St. 1887, c. 270, and the third at common law. At the trial in the Superior Court, before *Dunbar*, J., it appeared in evidence that the defendant, who was a contractor, had been engaged for some weeks previous to Friday, November 25, 1892, the day on which the accident occurred, in building an addition to a stone church in Brookline.

The plaintiff testified that " George Grant had charge of the work there. He gave his orders to every man in the place. I got my orders from him. I did not notice any difference when Willcutt. was there. I saw Grant speak to Willcutt. He, Grant, acted all the time as though he was boss there, — foreman. He took plans and read them and laid out the work from them." The plaintiff began work on the Monday preceding the day of the accident, and previously he had been in the defendant's employ off and on for about twenty years, and had done stonework part of the time. At the time when the plaintiff began work, the stone walls of the addition were nearly completed. On the forenoon of Wednesday, November 23, Grant ordered the plaintiff, while he was at work mixing mortar, to

assist some other workmen then engaged in pulling down an old wall, in front of which was a staging for the workmen to stand on. North of this wall was the old part of the church. The plaintiff went to the staging by a ladder outside the church and near the east end of the old wall. He stood at the east end, facing it, and threw stones he received from two workmen sidewise on to the grass outside. The plaintiff, having been thus engaged for about an hour, quit at noon, and in the afternoon resumed work at the mortar bed. The plaintiff said, on cross-examination, that when he went to work on the old wall he saw at right angles to the old wall, and nearly on a level with the staging, another staging, and all the time he was engaged in pulling down the old wall his back was turned to the other staging. At this time a wall was being built by the defendant at right angles to the old wall, and was called the new wall, in which there was a large space like a window. On the outside and inside of said wall were platforms, or a staging, which extended the whole length of the new wall, the distances being about thirty-five or forty feet. The plaintiff knew that work had been done on this new wall two days before the day upon which he was injured, and his position at the time he was engaged in throwing down stones from the old wall on to the grass outside was near the junction of the old and new walls, facing the old wall. A mason in the defendant's employ was engaged on the outside staging of the new wall on Wednesday, building the wall. He testified that on the south end of the inside staging was a quantity of ledge stones; that they were there when he began work Wednesday morning, and when he quit work Wednesday night; that no work was done on the new wall or its stagings by the defendant's employees on the following Thursday or Friday. No work was done on or about the building on Thursday, as it was a holiday. The plaintiff was engaged on Friday in mixing mortar at the mortar bed during the forenoon. In the afternoon he was ordered by Grant to go to the cellar of the addition to the church, and clean from the mortar all the old bricks he found there; "to clean them first and then put them under cover in the cellar of old part of church, as it looked like rain." The entrance to this cellar was under the old wall which was being taken down. The new cellar was not boarded in or roofed. The plaintiff

went to the cellar through the entrance from the old cellar. He found a large pile of old bricks in the vicinity of the southeast corner of the new cellar. There was a large rock about five feet west of the stone foundation of the new wall, and close by the pile. The plaintiff made a seat with a board, one end resting on the rock and one on the ground, and, sitting on the board with his legs stretched out, began cleaning bricks in the pile. He sat with his back to the foundation of the new wall, about six feet therefrom, and as he cleaned the bricks threw them in a pile near the entrance of the old cellar. The defendant's attorney asked the plaintiff, "As near as you can get it, then, about two feet from the staging which was on the very same new wall near the junction of which you had been working two days before?" *Ans.* "Yes, sir." The plaintiff testified that he saw only one upright piece of timber in the new cellar, which piece stood close to the southeast corner of the wall of the new cellar; that there were no ledger boards or putlogs connected with it, such as are used in building the lower parts of a staging, to be seen. The defendant's attorney asked the plaintiff: "All you saw was the staging?" *Ans.* "I didn't see the staging. I went into the cellar and I see nothing." "You knew it was there though?" *Ans.* "No, I didn't think anything about it. I went into the cellar and I see nothing to show me there was a staging. I didn't know the staging." The plaintiff testified that he didn't know there were stones on the wall near the place where he was cleaning brick; that when he helped the men take the stones from the old wall, he did not mind what they were doing on the new wall two days before; that he saw no person at this time working in his vicinity, and that his attention was directed to the work he was ordered to do. While the plaintiff was so at work, a stone fell on his head, injured his skull, glanced, struck his leg, fractured the fibula, and produced compound fracture of the tibia, and, in the opinion of the plaintiff's doctor, permanently disabled him. It was a new ledge stone, about eighteen inches long, six inches wide, and four inches thick. Its edges were ragged and sharp, and there was no mortar on it. Two of the defendant's masons had been working all that day on the south gable of the addition at a place considerably higher than the wall known as the

new wall being built, and from their position they could see this wall and inside staging. They noticed a large ledge stone on the southerly end of this inside staging. A considerable part of this stone projected over the outside edge of the inside staging. One of the masons called the other's attention to its dangerous position. The stone was there when they began work that morning. There were a number of other ledge stones on the staging near this end. In the afternoon of that day these workmen saw a carpenter, in the employ of a contractor who was doing the woodwork of the addition, get on the inside staging near where the ledge stones were, from the flooring of the addition south of the place where the new wall was being built. There was no cellar under this part of the addition, and the walls of this part were about completed. The carpenter had hold of a rafter about sixteen feet long, and was hoisting it to a person on the frame roof of the addition south of him. The rafter either hit the projecting ledge stone previously mentioned, or jarred the staging, so that the stone fell, and they heard the plaintiff scream. The distance from the staging to the ground was about twenty feet. The carpenters had been for some time previously accustomed to use the staging for the purpose of hoisting timbers to the other carpenters working on the roof, but there was no evidence that the plaintiff knew this.

The judge directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions.

*E. H. Pierce*, for the plaintiff.

*J. Lowell, Jr.*, (*S. H. Smith* with him,) for the defendant.

BARKER, J. The plaintiff cannot recover upon the first count. There was no defect in the material, plan, or construction of the staging, and the presence of the stone upon it was not a defect in ways, works, or machinery, within the meaning of the statute. St. 1887, c. 270. *Prendible* v. *Connecticut River Manuf. Co.* 160 Mass. 131. *Lynch* v. *Allyn*, 160 Mass. 248, 252. *Burns* v. *Washburn*, 160 Mass. 457.

While the jury might have found that the sole or principal duty of the defendant's foreman was that of superintendence, we are of opinion that the evidence did not justify a finding that the foreman was negligent in not discovering that the ledge stone was so placed as to be liable to fall. The case is in some

respects similar to *McCauley* v. *Norcross*, 155 Mass. 584, on which the plaintiff relies, but in that case the building was much nearer to completion than in this, and the opening through which the beam fell was one designed for the use of the workmen, having been left in the floor for the purpose of occasionally hauling up materials and to enable workmen to fasten the ropes of a derrick to iron columns above. And in that case the evidence tended to show that the superintendent had occasion to visit the part of the building where the opening was. It is not the same thing to say that a lack of due and proper superintendence may be inferred from leaving in the same position for two or three days iron beams so placed near such an opening, which workmen were expected to use, that one of them would be liable from a slight inadvertent push of the foot of a passer by to fall through the hole, as to say that such a lack may be inferred from leaving a ledge stone upon a staging used in building one of the walls of a church, the floors of which were not in and the roof of which was not on.

We do not think, in the absence of evidence that the stone had been so placed by any specific order of the foreman, or that he had had occasion to visit that part of the work while the stone was there or had actual knowledge that the stone was left upon the staging, and in view of the fact that how much of the stone projected could only be seen from above, that the mere fact that a stone had been left for two or three days with such a considerable portion of it projecting beyond the staging as to make it liable to fall if it should be hit, or if the staging should be jarred in the prosecution of the work, would justify a finding that the foreman was negligent in exercising superintendence.

This view of the case makes it unnecessary to consider whether the evidence shows that the plaintiff was himself in the exercise of ordinary care in placing himself where he did.

*Exceptions overruled.*