## NORA WELCH *vs.* PATRICK GRACE.

Suffolk.    January 13, 1897. — February 25, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Loss of Life — Employers' Liability Act — Master and Servant — Negligence — Action.*

The fact that some of several dynamite cartridges, used in blasting rock by being placed in a series of holes drilled in the rock and discharged by an electric battery, remain undischarged after a blast and subsequently explode and injure a workman while trying to withdraw them, is not a defect in the "ways, works, or machinery" of his employer, within the meaning of the employers' liability act, St. 1887, c. 270, § 1, cl. 1.

The employers' liability act, St. 1887, c. 270, § 2, gives a right of recovery whenever a person is instantly killed or dies without conscious suffering as the result of any negligence of the employer himself, but does not give the

right when a death occurs from the negligence of an employee, unless the negligence is of a kind that would subject the employer to a liability under § 1, if the deceased person had been injured and had survived.

A. was employed in B.'s quarry, where the rock was blasted by means of placing dynamite cartridges in holes drilled in the rock and discharging them by an electric battery. He had worked there and in another quarry about five years, and was familiar with the use of such cartridges. On one occasion, several of the cartridges failed to explode after a blast, and A. undertook to remove them. He remarked to B. that he had got the cap and one of the cartridges, and that there were two or three more in the hole which were frozen, and he could not get them out. B. told him to get some hot water and pour it into the hole, and also advised him to inquire of C., who, although not a foreman, had had an experience of several years in the use of these cartridges, and knew better than B. how to use them; and C. told A. to get some hot water, put it in the hole, and let it thaw out gradually. A. poured the hot water in the hole, and, about fifteen or twenty minutes later, put an iron spoon into the hole, when an explosion followed, and he received injuries which resulted in his death. *Held*, that an action therefor against B. under the employers' liability act, St. 1887, c. 270, could not be maintained.

TORT, under the employers' liability act, St. 1887, c. 270, for causing the death of the plaintiff's husband, Maurice Welch, while in the defendant's employ. Trial in the Superior Court, before *Bond*, J., who, at the defendant's request, ruled that the plaintiff was not entitled to recover, and directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions. The facts appear in the opinion.

*F. Burke*, for the plaintiff, submitted the case on a brief.

*J. Lowell, Jr.*, for the defendant.

KNOWLTON, J. This action is brought under St. 1887, c. 270, § 2, which provides that " where an employee is instantly killed, or dies without conscious suffering, as the result of the negligence of an employer, or of the negligence of any person for whose negligence the employer is liable under the provisions of this act, the widow of the deceased, or, in case there is no widow, the next of kin, . . . may maintain an action for damages therefor," etc. The plaintiff contends that the death of her husband was caused by a defect in the " ways, works, or machinery " of the defendant, within the meaning of these words as used in the first section of this act. But we are of opinion that this contention cannot be maintained. There was no defect in any of the machinery, tools, or appliances used in the defendant's business. The defendant was engaged in quarrying stone in a ledge. The work was done by drilling holes and blasting

with dynamite cartridges, and removing the stone which was thus dislodged. His employees were working upon the material which was being thrown off from its solid foundations and broken up to be carried away. The ledge as a ledge was being destroyed, and some of the processes of destruction were dangerous. There was more or less danger in the use of dynamite cartridges. It was necessary to load the holes drilled in the ledge. Blasts were sometimes made by drilling a series of small holes about a foot deep, and loading them with dynamite cartridges, and sometimes by drilling by steam a large number of holes about twelve feet deep, and loading them with cartridges which were discharged simultaneously by an electric battery. The evidence showed that sometimes the cartridges in one of these holes would fail to be discharged, and it appears that at the time of the accident the plaintiff's husband found one of these deep holes in which the cartridges remained undischarged after a blast in which those in the other holes of the series had exploded. This was merely a condition of the material upon which the employees were working, caused by their work, and necessarily incident to the business in which they were engaged. It was in no proper sense a defect in the ways, works, or machinery of the defendant. *Lynch* v. *Allyn*, 160 Mass. 248, 252. *Shea* v. *Wellington*, 163 Mass. 364, 369. *Carroll* v. *Willcutt*, 163 Mass. 221. *Willetts* v. *Watt*, [1892] 2 Q. B. 92. *McGiffin* v. *Palmer's Shipbuilding & Iron Co.* 10 Q. B. D. 5. *Howe* v. *Finch*, 17 Q. B. D. 187.

The defendant contends that under the provision above quoted there cannot be a recovery for an injury resulting from negligence of an employer, except in those cases in which the negligence comes within the provisions of the first section of this chapter. But we are of opinion that the clause " under the provisions of this act " qualifies only the clause " any person for whose negligence the employer is liable," and does not limit the preceding clause, " as the result of the negligence of an employer." The effect of the section is to give a right of recovery whenever a person is instantly killed or dies without conscious suffering as the result of any negligence of the employer himself, but not to give the right when a death occurs from the negligence of an employee, unless the negligence is of

a kind that would subject the employer to a liability under the first section of the statute if the deceased person had been injured and had survived. It therefore becomes necessary to inquire whether there was any evidence of negligence on the part of the defendant. There was no evidence of any negligence in failing to furnish proper machinery, tools, or appliances for use in the business in which the plaintiff's husband was engaged. Is there evidence of any duty to instruct the plaintiff's husband, or to warn him of danger?

There was undisputed testimony that he had worked in the defendant's quarry for about three years, and that he had previously worked on another ledge on Warren Street two years. For some time previous to the accident he had been accustomed to load holes about a foot deep, and to discharge the blasts therefrom, although he had taken no part in loading and discharging the large blasts from the holes drilled by steam. The evidence tended to show that he and the foreman, one William Grace, who was away sick on the day of the accident, were the only persons who were then accustomed to set off blasts on this ledge. All the evidence indicates that the deceased was familiar with the use of dynamite cartridges, and there is no evidence that the defendant had any reason to suppose that on the day of the accident he needed any instruction or warning in regard to the danger from an improper use or treatment of them. His conversation with the defendant about the cartridges on that day gave the defendant no reason to suppose that he needed warning or instruction in regard to danger. He said that he had got the cap and one of the cartridges from the charge that failed to explode, and that there were two or three more cartridges in the hole which were frozen, and that he could not get them out. The only unusual thing to which he called attention, and about which he made inquiry, was the frozen condition of the cartridges. He said nothing to indicate that he needed any warning in regard to the danger of explosion if the dynamite was improperly handled.

The only remaining question is whether there is evidence of negligence in the words spoken to him by the defendant. In reply to his inquiry about the cartridges frozen in the hole, the defendant told him to get some hot water and pour it into the

hole, and also advised him to inquire of Donovan. There is no evidence tending to show that the direction to pour hot water into the hole to thaw the frozen cartridges was improper, and the plaintiff's husband neither asked for nor received any advice or direction in regard to what should be done afterwards. There is no evidence that the advice or direction to inquire of Donovan was improper, for the evidence tends to show that Donovan, although not a foreman at this time, had had a large experience covering six or seven years in the use of this kind of cartridges, and that he knew better than the defendant how to use them. If it was not negligence in the defendant to refer the plaintiff's husband to Donovan, he would not be liable for any negligence of Donovan in his dealings with the deceased employee. But there is no evidence that Donovan told him anything except " to get some hot water, put it in the hole, and let it thaw out gradually." There is no evidence that any inquiry was made, or any advice given in regard to what should be done after the cartridge had been thawed out, but in that part of the work the plaintiff's husband seems to have acted upon his own judgment.*

We are of opinion that there was no evidence that the defendant owed the plaintiff's husband any duty to give him warning or instruction, or that he gave him any improper direction.

*Exceptions overruled.*

---

* It appeared in evidence that he poured hot water in the hole, and, about fifteen or twenty minutes later, put an iron spoon into the hole, when an explosion followed, and he received injuries which resulted in his death.