## Cleveland, Cincinnati, Chicago & St. Louis Railway Company v. J. R. Austin.

1. EMPLOYERS' LIABILITY ACT—*enacted in Indiana, construed.* A *temporary* scaffold held, in this case, to constitute a part of the plant of the defendant by virtue of the language of the Employers' Liability Act of Indiana as follows: "Ways, works, plant, tools and machinery connected with or in use in the business of the corporation."

2. EMPLOYERS' LIABILITY ACT—*enacted in Indiana, how to be construed.* This act being remedial in its nature is to be liberally construed for the suppression of the mischief and the advancement of the remedy.

3. VICE PRINCIPAL—*who is.* A servant designated by a vice principal to perform a particular service, which had been delegated to him by his master, in turn, becomes a vice principal.

Action on the case for personal injuries. Appeal from the Circuit Court of Coles County; the Hon. E. R. E. KIMBROUGH, Judge, presiding. Heard in this court at the November term, 1905. Affirmed. Opinion filed June 19, 1906.

GEORGE F. McNULTY, for appellant; H. A. NEAL, of counsel.

EDWARD C. & JAMES W. CRAIG, JR., for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is a suit brought by the appellee against the appellant to recover damages for injuries received by the appellee, while in the employ of the appellant as a bridge carpenter. The declaration consists of three counts in each of which the plaintiff avers that the defendant was in the

use, possession and operation of a certain line of railroad, and that he was, on the 5th of April, 1904, in its employ as a bridge carpenter, and at work on a bridge at a point on defendant's right of way about six miles east of Danville, Indiana, and further avers that there was at the time in existence a statute in force in the State of Indiana, which reads in part, as follows:

"Be it enacted   *   *   *   that every railroad or other corporation, except municipal, operating in this State, shall be liable in damages for personal injury suffered by any employe while in its service, the employe so injured being in the exercise of due care and diligence, in the following cases:

First.   When such injury is suffered by reason of any defect in the condition of the ways, works, plant, tools and machinery connected with or in use in the business of such corporation, when such defect was the result of negligence on the part of the corporation or some person entrusted by it with the duty of keeping such ways, works, plant, tools or machinery in proper condition.

Second.   Where such injury resulted from the negligence of any person in the service of such corporation to whose order or direction the injured employe at the time of the injury was bound to conform and did conform.

Third.   Where such injury resulted from the act or omission of any person done or made in obedience to any rule, regulation, or by-law of such corporation, or in obedience to the particular instructions given by any person delegated with the authority of the corporation in that behalf.

Fourth.   Where such injury was caused by the negligence of any person in the service of such corporation, *   *   *   or where such injury was caused by the negligence of any person, co-employe, or fellow-servant   *   *   at the time acting in the place and performing the duty of the corporation in that behalf, and the person so injured, obeying or conforming to the order of some superior at the time of such injury, having authority to direct; but nothing herein shall be construed to abridge the liability of the corporation under existing laws." (Revised Statutes of Indiana, section 7083.)

It is then substantially averred in the first count that the defendant should, by virtue of the first paragraph of said

statute, have used reasonable care to provide the plaintiff with a reasonably safe place to work and to have used reasonable care to prevent any defects to exist in the condition of the ways, works, plant, tools and machinery connected with or in the use of the business of said defendant; that notwithstanding such duty, the defendant negligently allowed a scaffold on which the plaintiff was ordered to work and which was a part of the ways, works, plant, tools and machinery connected with or in use in the business of the defendant corporation, "to be defectively constructed in that one end of it was supported by a rope that was defectively tied or attached to the bridge, and that that defect was the result of negligence on the part of the defendant corporation and that the rope, as a result thereof, slipped at the end that was attached to the said bridge, and the plaintiff, as a result thereof, while he was using due care and diligence for his own safety in that behalf, and while he was on said scaffold at work    *    *    * was thrown to and upon the ground," etc.

The second count charges that the defendant so negligently and improperly built and constructed the scaffold that it was insufficient to support the weight of the plaintiff and that as a result thereof it fell and he was thrown to the ground.    The third count charges that the defendant so negligently and improperly tied and attached the upper end of the rope to the bridge that it was insufficient to support the weight of the plaintiff who was required to work upon it.

A trial by jury resulted in a verdict for the plaintiff for $900.    To reverse the judgment rendered thereon, the defendant prosecutes this appeal.

The facts, as shown by the evidence, are as follows:    Appellee, who is fifty-one years of age, entered the employment of appellant as a bridge carpenter on January 9, 1904. Prior to April 5, 1904, an abutment of an east and west bridge upon appellant's railroad near Danville, Indiana, by reason of a rise in the creek over which the bridge crossed, had been washed out, leaving the steel work hanging with-

out any support.   On that day appellee was and had been
for several days engaged in boring holes in piles which had
been driven into the ground for the purpose of supporting
the steel work, and then securing the braces to the piles by
the use of nuts and bolts.   The braces were attached to the
piles at a point about eighteen feet from the ground and
twelve feet below the top of the bridge.   To do this work
he was compelled to use a hanging scaffold furnished by
appellant, consisting of a single board twelve inches wide
and about fifteen feet in length.   The south end of the
board was securely nailed to a heavy beam; the north end
projected beyond the bridge and was suspended therefrom
by a rope, the upper end of which was tied to the bridge,
and the lower end to the north end of the board.

The evidence on the part of appellee tends to show that
while he was attempting to place a nut on a bolt which he
had inserted through the brace and one of the piles, the
upper end of the rope, by reason of not having been prop-
erly tied, became detached from the bridge, causing the
scaffold to fall and throwing appellee to the ground.   Ap-
pellee himself testifies that the rope was tied to the bridge
by a man named Oliver, who had been placed by Keener,
the boss in charge of the gang, upon the bridge to attend
to the upper end of the line and to pass down bolts and
nuts as they were needed; that the scaffold had been
changed from another place shortly prior thereto; that he
himself nailed the south end of the board to the timber
and tied the rope to the north end of the board.

It is insisted by appellant that inasmuch as the scaffold
upon which appellee was working when injured was a tem-
porary device, changed from time to time as the work
progressed, and was far removed from any plant or perma-
nent establishment of the defendant, it was not a part of
the " ways, works, plant, tools and machinery connected
with or in use in the business of the corporation; " that the
statute in question did not apply to the facts in the case;
that the same was improperly admitted in evidence, and

that a verdict in favor of the plaintiff should have been directed.

So far as we are advised, the Supreme Court of Indiana has not as yet construed the terms quoted.

The Massachusetts "Employer's Liability Act" is substantially identical with that of Indiana except that the words "ways, works or machinery" only are used, the words "plant and tools" which appear in the Indiana statute being omitted. It has been repeatedly held by the courts of the former state that a temporary staging of the kind under consideration is not within the terms "ways, work or machinery" as used in the statute. Lynch v. Allyn, 160 Mass. 248; Burns v. Washburn, 160 Mass. 457; Carroll v. Willcutt, 163 Mass. 221; Adasken v. Gilbert, 165 Mass. 444. We are disposed to follow the construction thus placed upon the language in question. We think, however, we are warranted by authority in holding that the scaffold here involved was a part of the plant of appellant company. "Plant" is defined by the Century Dictionary (Vol. 6, page 4531) as "the fixtures, machinery, tools, apparatus or appliances, etc., necessary to carry on any trade or mechanical business or any mechanical operation or process" (cited in Telegraph Co. v. D'Alemberte, 39 Fla. 25) and by Worcester as "the machinery, apparatus or fixtures by which a business is carried on" (cited in Maxwell v. Dental Mfg. Co., 77 Fed. Rep. 938). Webster defines the terms as "the fixtures and tools necessary to carry on any trade or mechanical business," which definition was adopted in Liberty L. Co. v. Barnes, 77 Ga. 748, and in Maxwell v. Dental Mfg. Co., supra.

In the Employer's Liability Act in force in England in 1880 (43 and 44 Vict. c. 42), the words "ways, works, machinery, or plant" are used. In Cripps v. Judge, 13 Q. B. Div. 583, an action under such act, the plaintiff was in the employ of the defendant and was injured by the breaking of a ladder used to support a scaffold. It was held that this constituted a defect in the condition of the defendant's "plant" within the meaning of the act. In Weblin v. Bal-

lard, 17 Q. B. Div. 122, the deceased was employed as a fireman at the defendant's brewery and was killed by falling from a ladder which, although perfect in itself, being without hooks or stays, was unsafe for the purpose for which it was being used. The court held that the ladder constituted a defect in the condition of the ways or "plant" of the defendant within the meaning of the Employer's Liability Act. Yarmouth v. France, 19 Q. B. Div. 647, was an action under the same act. The plaintiff was a driver in the employ of the defendant, a wharfinger, who, for the purpose of his business, owned and used carts and horses. One of the horses was vicious and kicked and injured the plaintiff, who thereupon brought the suit. It was held by the court that the horse in question was "plant" used in the business of the defendant and that the vice in the horse was a defect in the condition of such "plant" within the meaning of the act. In Dresser's work on "Employer's Liability Acts" (section 48) it is said: "'Plant' comprises whatever apparatus, fixtures or tools a master uses in his business." For further instrumentalities or appliances held to come within the definition above given, see cases cited in Labatt on Master and Servant, section 668, note.

Statutes such as the one under consideration are in their nature remedial. Their purpose is to supply defects or abridge superfluities in the law, and the rule is that they are to be construed liberally for the suppression of the mischief and the advancement of the remedy, and we are not disposed, therefore, to adopt the restricted construction of the word "plant" contended for by counsel for appellant.

We are further of opinion that the first paragraph of the statute of Indiana is applicable to the facts in the case at bar and that the admission of the same in evidence did not constitute error.

There is evidence in the record tending to prove and the jury was not unwarranted in finding that the injuries to appellee were occasioned by the failure of Oliver to properly and securely fasten and keep fastened to the bridge

the rope by which the scaffold was suspended, and further that such duties were primarily entrusted to Keener, its foreman, and by him, in turn delegated to Oliver.  Both under the statute and at common law the duty rested upon appellant in its capacity as employer to exercise ordinary care to make and keep reasonably safe the place where appellee, its employee, was required to work.  Such duty was a continuing one which it could not delegate to an agent so as to escape responsibility in case of a negligent performance of the same.  Although appellant may have appointed one of its servants to perform such duty, and he, in turn, another, the latter, while so engaged became a vice principal and not a co-employee of appellee and others engaged in the general work.  Indiana Car Co. v. Parker, 140 Ind. 67; Coal Co. v. Young, 117 Ind. 52.

The question as to who tied the knot and by what authority and whether it was properly tied, and whether the accident was the result of a failure in this particular, or of a lack of care on the part of appellee, were questions of fact for the determination of the jury, and we cannot say that their findings were manifestly contrary to the evidence or that the jury were actuated by improper motives. That the scaffold dropped by reason of the rope becoming unfastened, as claimed by appellee, seems to us more probable than that the scaffold tilted and swung from under appellee, as testified to by the witness Wright.  If the other end of the plank was nailed fast, as the evidence tends to show, it is not likely that it tilted or swung around in the manner detailed by him.

The trial court did not err in refusing to direct a verdict for the plaintiff nor in refusing to grant a new trial.  It is not assigned that the damages are excessive.  The judgment is therefore affirmed.

*Affirmed.*