LUKE TARDIFF *vs.* LYNN SAND & STONE COMPANY.

Essex.     November 7, 1934. — November 28, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Practice, Civil,* Exceptions: whether error harmful. *Negligence,* Employer's liability, In blasting. *Witness,* Cross-examination. *Waiver.*

At the trial of an action of tort by an employee against his employer for personal injuries, it was assumed that the defendant was not a subscriber under the workmen's compensation act. The defendant objected and excepted "to the allowance and permission of the court to the reference in" the declaration "that during" the plaintiff's "said employment and at the time of his receiving the injuries stated herein, the defendant was not a subscriber to the workmen's compensation act so called in accordance with the provisions of the General Laws then in force." The judge made no statement to the jury on the subject. *Held,* that, although the statement in the declaration to the effect that the defendant was not such a subscriber was not required and the judge should have stated to the jury that that factor had no bearing upon any issue involved in the case, there was no prejudicial error and the defendant's exception must be overruled.

At the trial of an action of tort by a jack hammer driller against his employer, who was engaged in the business of quarrying and crushing stone and was not insured under the workmen's compensation act, for personal injuries sustained through an explosion of dynamite which occurred when the plaintiff was cleaning out with his drill a hole which he thought did not contain a charge of dynamite, there was evidence that, through a failure by a fellow servant of the plaintiff to inspect the hole, a charge of dynamite was left in the hole with nothing to indicate its presence, so that the danger to the plaintiff was concealed from him; and that the plaintiff was injured while engaged in work which he was required, and had been directed, to do by his superior. A motion by the defendant that a verdict be ordered in his favor was denied. *Held,* that

(1) The danger to the plaintiff being concealed and his injury being due to alleged negligence of a fellow servant, there was no evidence of a so called contractual assumption of risk by the plaintiff;

(2) A finding that the plaintiff's injuries were a result of negligence of his fellow servant, for which the defendant was responsible, was warranted;

(3) The motion that a verdict be ordered for the defendant properly was denied: a verdict for the plaintiff was warranted.

At the trial of the action above described, no abuse of discretion appeared in permitting a witness, who was a foreman of the defendant

and was called by him, to be asked in cross-examination, "And you want to be boss, don't you?"

In view of the evidence at the trial above described, no error was shown in an instruction to the jury, that, if they found that the plaintiff at various times put his drill in holes and blew them out, and that the defendant through an employee who loaded the holes or through his foreman knew that the plaintiff was doing so in violation of a general rule of the defendant and of directions to the plaintiff, it was for the jury to determine whether the defendant had waived the directions not to put a drill in the holes.

TORT. Writ dated January 16, 1931.

The action was tried in the Superior Court before *Goldberg,* J., upon a fourth count, added to the declaration by amendment and described in the opinion.

The record states: "The defendant objected and excepted to the allowance and permission of the court to the reference in said [first three] counts, [which were not submitted to the jury] including the fourth count 'that during his said employment and at the time of his receiving the injuries stated herein, the defendant was not a subscriber to the workmen's compensation act so-called in accordance with the provisions of the General Laws then in force'."

Material evidence and other exceptions saved by the defendant are described in the opinion. There was a verdict for the plaintiff in the sum of $4,500. The defendant alleged exceptions.

*R. L. Sisk,* for the defendant.

*J. W. Sullivan,* (*F. J. Hamelin* with him,) for the plaintiff.

CROSBY, J. This is an action to recover for personal injuries sustained by the plaintiff while in the employ of the defendant. The case was submitted to the jury on the fourth count of the declaration which alleged, in substance, that on June 29, 1929, the defendant carried on the business of quarrying and crushing stone, and the plaintiff was in its employ; that the defendant by the use of power drills bored holes in stones and ledges and blasted stones and ledges by exploding dynamite sticks inserted in the holes; that after each such explosion and blasting it was a part of the work of the plaintiff and others to go upon the ledges and among stones on the defendant's property

and drill holes in the stones after blasting the same; that
it was further a part of the plaintiff's work to clean out
and complete the drilling of holes that had either been
incompletely drilled or not been used and had thereafter
become filled with particles of stone or dust or other ma-
terials; that the defendant knew, and in the exercise of
due care should have known, that the plaintiff was en-
gaged in such work and should have provided adequate
inspection of the place where the plaintiff carried on his
work, especially with reference to the presence of any
unexploded dynamite in such drilled holes in the rocks or
ledges; that the defendant had a system of inspection of
such stones and ledges with reference to explosions but
it was negligently inadequate, and on June 29, 1929, while
the plaintiff was at work in the manner in which the
defendant had instructed him, the agent or servant of the
defendant entrusted with the duty of inspecting the place
in question so negligently performed his work that a quan-
tity of dynamite was permitted by him to remain concealed
by fine dust, small stone and other material in a hole in
a rock, without any warning being given or any care being
taken by said inspector of the presence of the explosive;
and that while the plaintiff in the course of his work was
cleaning out and drilling further into the hole, the drill
came in contact with the dynamite which exploded and
the plaintiff was injured. It is further alleged in the fourth
count that "the defendant was not a subscriber to the
workmen's compensation act . . . ."

At the close of the evidence the defendant filed a motion
for a directed verdict in its favor, which was denied, and
the defendant excepted.

It appears from the evidence that the defendant was
engaged in quarrying stone out of a ledge on its premises,
causing it to be thrown down on to the floor of the quarry;
that some of the pieces were so large that they could not be
broken up in a stone crusher to a size suitable in the con-
struction of highways for which they were intended ulti-
mately to be used, and had to be reduced in size by other
charges of dynamite. The plaintiff was a jackhammer

driller, so called, and he with five others was employed to drill holes in such pieces, and thereafter it was the duty of another employee, called a loader, to put the necessary amount of dynamite in the holes, attach a fuse and cap to the same, fill each hole with stone dust and tamp it. Nothing then would be seen except the fuse, from which it would appear whether there was dynamite in the hole or not. Then the jackhammer driller would ignite the fuse and cause the dynamite to be exploded. This was done just before noon and just before quitting time, which was about five o'clock in the afternoon.

The plaintiff testified that he was twenty-six years of age, and began work for the defendant in the spring of 1928; that he worked all over the plant but did not do any drilling that year; that in 1929 he used the jackhammer driller which made small holes approximately one inch in diameter; that the man who drilled the hole had nothing to do with the dynamite except that when the hole had been loaded and tamped he exploded the dynamite by lighting the fuse; that previous to the day he was injured he had been directed by Joel Tardiff, who represented the defendant, to clean out any holes that had been drilled and become filled with dust and chipped pieces of stone; that he found such holes the day before he was hurt and cleaned them out; that they has been drilled by some other employee — any jackhammer driller finding such holes would clean them out; that he would find one or two such holes every day; that on the day he was hurt, after blowing the dust out of one of the holes and going down about three inches he found it was hard and "started to drill to make it deep enough for that size stone"; that he knew it was a drilled hole "but there was no fuse sticking out . . . the hole was filled with dust and chips of rock, but it was not filled level with the stone; that it was not filled three or four inches from the top"; that he knew he was at the end of the dirt because it was hard like a rock; that he started to drill and there was an explosion. He further testified that the loader was to blame for the accident because he was supposed to inspect the holes every night and at noon; that he could tell

whether the hole had been loaded by the fuse; that there was no fuse in the hole; that if there had been it would have told him there was dynamite in the hole.

George Maso, a witness called by the defendant, testified that he was employed by the defendant, and had been so employed for the last eleven years; that he told the plaintiff that there was a rule forbidding jackhammer drillers to touch a hole that had been filled with dynamite and if he saw a hole in any stone he was not to touch it, whether there was dust in it or it was loaded, as possibly there was dynamite in it. On cross-examination this witness testified that the rock which exploded was about twice the size of the court reporter's desk; "that he was the only loader on this type of work; that he had to load the holes that six men drilled, that he had to inspect the work of six jackhammer drillers, to inspect the holes that had been drilled; that his job was to go out and see the result of each blast; that if a hole had not exploded it was his job to inspect, it and see why it didn't explode and put in a new fuse; that if a man was drilling a hole and was down three or four inches and the whistle blew he would leave it, but he would not always go back and finish that particular hole in the morning . . . that if there was a hole in the stone it was the man's duty to speak to him about it; that if a man found a hole in a stone he is supposed to send for him; that if there was dynamite in the hole the jury may assume that he, put it in the hole; that he loaded the particular stone; that he thought the fellow had tamped it but he did not see him do it; that the reason somebody did not discover that the hole was filled the night before was because he had other work to do, he was very busy; that if he had found the hole the night before, he would have put a new fuse in there; that if he came along and found a hole in the stone such as is described by the plaintiff that would negative the fact that there was dynamite in the hole; that he would inspect it; that if dynamite was put in the holes and dust put on top of it, but not tamped it was unintentional; that they would be tamped subject to his directions; that the dynamite goes in the hole first and then the dust; that the man who tamped

it would follow after him; that he would leave the string protruding above the top of the hole about three or four feet outside; that he never put dynamite in a hole without putting a string on it; that it is possible that tamping was not done at times; that fuses are sometimes cut by sharp stones; that a hole not tamped would look entirely different than a hole that had been filled and tamped; that the amount of dynamite to be put in a hole would depend upon the size of the hole, the depth of the hole; that he told the plaintiff never to put his jackhammer drill in a hole that had been drilled."

It was assumed at the trial that the defendant was not a subscriber under the workmen's compensation act. Although an allegation in the declaration to that effect was not required, and the presiding judge should have stated to the jury that it had no bearing upon any issue involved in the case, there was no prejudicial error. See *Chaves* v. *Weeks*, 242 Mass. 156, 158.

The evidence warranted a finding that the plaintiff was injured while engaged in work which he was required to do, namely, to clean out an unfinished drill hole which had not been tamped and required further drilling; that there were dust and chips of rock in the hole which it was his duty to remove. It could have been found that no fuse or string was connected with the hole to indicate to the plaintiff that the hole had been charged with dynamite. In these circumstances it could have been found that the plaintiff in further drilling the hole was acting in accordance with the requirements of his work. The evidence warranted a finding that all the holes had previously been properly inspected by Maso, a fellow servant, and that no dynamite had been left in any other hole.

There is no contractual assumption of risk, as the plaintiff's case rests upon the negligence of a fellow servant. *Demaris* v. *Van Leeuwen*, 283 Mass. 169, and cases cited. The rule that an employee assumes the risk of what is obvious in the place where he voluntarily consents to work does not apply to concealed dangers. It was said by Knowlton, J., speaking for the court in *Hopkins* v. *O'Leary*, 176

Mass. 258, at page 264: "While the plaintiff assumed the obvious risks of the business, he did not assume the risk from the failure of the defendant, either personally or through a superintendent, to perform the ordinary duties of an employer in providing against unnecessary or concealed dangers in places in which laborers were set to work." The defendant, not being insured under the workmen's compensation act, could not rely upon the defences that the plaintiff's injuries were caused by his own negligence or by the negligence of a fellow servant, or that the plaintiff had assumed the risk of the injury. *Cronan* v. *Armitage*, 285 Mass. 520. In *Cogliano* v. *Ferguson*, 228 Mass. 147, it was held that, if the plaintiff was ignorant of any danger arising from an unexploded charge of dynamite, he did not assume the risk of such hidden danger. The case of *Welch* v. *Grace*, 167 Mass. 590, is plainly distinguishable upon the facts there shown from the present case.

Upon the evidence the jury were warranted in finding that the plaintiff's injuries were due to the negligence of Maso, his fellow servant, in failing to inspect the hole in which the explosion occurred and in not placing therein a new fuse as a warning to him. The reason given by Maso as to why someone did not discover the night before that the hole was filled was that he had work to do and was very busy, and warranted a finding that he made no inspection of the hole in question, that such failure was due to his negligence, and that for his negligence the defendant was responsible. It is plain from the entire evidence and the reasonable inferences that the defendant's motion for a directed verdict in its favor could not properly have been granted.

The defendant's foreman, one Tardy, was asked on cross-examination by counsel for the plaintiff, "And you want to be boss, don't you?" The defendant excepted to the admission of this question, but he was permitted to answer it on the ground of possible bias. It has frequently been held by this court that the limits and scope of cross-examination are largely within the discretion of the trial

judge. This exception must be overruled. *Hanley Co. Inc.* v. *Whitney*, 279 Mass. 546, 557.

The defendant excepted to the instruction of the judge in which he stated, in substance, that if the jury found that the plaintiff at various times put his drill in holes and blew them out, and that the defendant through its loader Maso, or its foreman Tardy, knew that the plaintiff was putting his drill in the holes and blowing them out in violation of the general rule and his directions to him, it was for the jury to determine whether it waived the directions not to put a drill in the holes. We are of opinion that in view of the evidence this instruction was not erroneous. It could have been found that the rule originally in force had been waived by the defendant and that the plaintiff knew it was no longer in force. *McNee* v. *Coburn Trolley Track Co.* 170 Mass. 283. *Sweetland* v. *Lynn & Boston Railroad*, 177 Mass. 574, 579, 580. *Cutts* v. *Boston Elevated Railway*, 202 Mass. 450, 456. *Von Ette's Case*, 223 Mass. 56, 60. *Farber* v. *Mutual Life Ins. Co.* 250 Mass. 250, and cases cited.

As no error appears in the conduct of the trial the entry must be

*Exceptions overruled.*