WILLIAM A. KENDRICK vs. LYNN SAND & STONE COMPANY.

Essex.    December 6, 1944. — February 28, 1945.

Present: FIELD, C.J., QUA, DOLAN, RONAN, & WILKINS, JJ.

*Negligence*, Employer's liability: quarry, explosives, assumption of risk.

Evidence, at the trial of an action by an employee against his employer, operating a quarry and not insured under the workmen's compensation act, for personal injuries sustained when in 1937 the plaintiff, while running away from a blast, was struck by a piece of stone thrown five hundred sixty-five feet by the blast, warranted findings that the plaintiff had not "contractually" assumed the risk of the injury and that the defendant had been negligent in failing to furnish him "ample protection" from rock thrown by the blast.

TORT. Writ in the Superior Court dated November 4, 1937.

The case was tried before *Buttrick*, J.

*K. C. Parker*, for the plaintiff.

*R. L. Sisk*, for the defendant.

QUA, J. On August 13, 1937, the plaintiff, while at work as an employee of the defendant at its quarry in Swampscott, was struck in the head and severely injured by a piece of rock flying from a blast. After a verdict for the plaintiff, the judge entered a verdict for the defendant on leave reserved and reported the case.

The defendant was not insured under the workmen's compensation law. The issue at the trial therefore was whether the injury was proximately caused by any negligence of the defendant, its agents or servants, and this depended in part upon whether the plaintiff contractually assumed the risk. *Sylvain* v. *Boston & Maine Railroad*, 280 Mass. 503. *Cronan* v. *Armitage*, 285 Mass. 520. *Greem* v. *Cohen*, 298 Mass. 439, 444. *Enga* v. *Sparks*, 315 Mass. 120, 125. See now, however, G. L. (Ter. Ed.) c. 152, § 66, as appearing in St. 1943, c. 529, § 9A.

The quarry seems to have been a large one located in the side of a hill. It was oval in shape, surrounded on

"three sides" by a "face" or "cliff" which could be found to have been from eighty to one hundred feet in height, and it was possible to run toward or out of the entrance to the quarry when a blast was fired. At the time of the injury to the plaintiff a section of the "face" had been blasted out which could be found to have been opposite the entrance to the quarry and about eight hundred feet distant therefrom. This left a large amount of rough and broken stone of various sizes heaped upon the quarry floor in front of the "face." It then· became necessary to drill and blast the larger stones. This was done by so called "pop hole" blasting. When the required number of holes (in this instance one hundred eleven, as the jury could find) had been drilled and the dynamite had been inserted by the "dynamite man," it became the duty of the plaintiff and ten or eleven other "lighters" to light the fuses and then to run before the "pop hole" blasts exploded. The plaintiff ran toward the entrance of the quarry and was struck when he had reached a point five hundred sixty-five feet from the source of the blasts.

There was evidence that in running as he did the plaintiff was doing what he had been told by the foreman and by the "dynamite man" that it was proper for him to do; that all the "lighters" habitually did the same and did so on this occasion; that it was unusual but not impossible for stones to fly as far as the stone did in this instance; that stones would not fly over three hundred feet from a "pop hole" blast unless the hole was overloaded with dynamite; that the plaintiff and others who worked with him as "lighters" had never seen stones fly so far as did the stone that struck the plaintiff; and that the plaintiff, who had worked in the quarry about three months, "had no idea" that he might be hit. The evidence need not be stated in further detail. Some of it was conflicting, and some of the plaintiff's testimony as to his lack of knowledge of danger was weakened on cross-examination, but he was entitled to have the jury pass upon it. It seems plain that the jury could find that the danger of being hit by a stone from a "pop hole" blast at a distance of five hundred

sixty-five feet was not an obvious risk of the work which the plaintiff impliedly agreed to assume when he undertook the employment (*Engel* v. *Boston Ice Co.* 295 Mass. 428, 432; *Doherty* v. *Paul's for Tires, Inc.* 314 Mass. 83, 85), and that they could also find that the plaintiff's injury was caused by the negligence of the defendant in failing adequately to warn the plaintiff or by negligence of the defendant's dynamite man in overloading the blast. *Tardiff* v. *Lynn Sand & Stone Co.* 288 Mass. 472. *Marana* v. *McDonough*, 212 Mass. 189. *Cogliano* v. *Ferguson*, 228 Mass. 147, and cases cited. See *Driscoll* v. *Gaffey*, 207 Mass. 102; *Coffey* v. *West Roxbury Trap Rock Co.* 229 Mass. 211; *Goldman* v. *Regan*, 247 Mass. 492.

The case is complicated by reason of a question asked by the judge and answered by the jury before the recording of the verdict. The judge asked what negligence the jury found on the part of the defendant, and the jury answered, "Lack of ample protection." If we assume that this answer had the effect of eliminating all other possible forms of negligence and of confining the verdict to the negligence specified, and if we further assume that "protection" meant only some physical and tangible means of warding off flying stones and did not comprehend such lack of protection as failure to warn of dangers of which the plaintiff was ignorant, still we think that the verdict of the jury can stand on the narrow ground to which it is thus limited. The defendant contended that adequate protection was furnished by two electrically operated shovels, said to be "ninety-four ton" shovels, which stood on opposite sides of the quarry two hundred twenty-five feet and "two hundred feet or more" respectively from the blast. The plaintiff testified that he sought shelter behind the shovels when there was a "mid-morning" blast (which could be found to have been a rare occurrence); and that the reason for doing so was that the men could get back to work sooner. But the jury could find that nearly all the blasts, including the one at the time of the accident, were at noon or night when the men did not return to work; and that it was the practice with the

knowledge and approval of the defendant to run toward the entrance, as the men did at the time of the accident. An expert witness testified that a shovel "is not a perfect shelter in the open," and that he would "much prefer to have the men out in the open and dodge the stone." The "dynamite man" testified that he instructed the men when they went to the shovels to get into the buckets; and that a bucket would hold six or eight men by a "tight squeeze" but not eleven men. The jury were not required to believe that the shovels, constructed for an entirely different purpose and located well within the distance to which they could find stone would fly from even a normal "pop hole" blast, were an adequate shelter, and they could find that, as the work was actually done with the defendant's knowledge and express approval, the men were expected to run toward the entrance through an area in which they might be overtaken by flying fragments while without any "protection" of any kind.

The verdict entered on leave reserved is set aside, and judgment is to be entered for the plaintiff on the verdict returned by the jury.

*So ordered.*