# DECISIONS

OF THE

# SUPREME JUDICIAL COURT

OF

# MASSACHUSETTS

GEORGE J. GODON *vs.* ARTHUR N. McCLURE.

Worcester. September 22, 1947. — November 7, 1947.

Present: QUA, C.J., LUMMUS, DOLAN, RONAN, & WILKINS, JJ.

*Negligence,* Employer's liability: appliance, assumption of risk. *Contract,* Of employment.

Evidence, that, when a painter not insured under the workmen's compensation act hired a certain employee, a gasoline torch furnished to him for use in burning off paint was in good condition and that subsequently it became worn, leaky and dangerous and continued to be in that defective condition for a substantial period until it finally caught fire and caused injury to the employee in 1940, warranted findings that the employee did not contractually assume the risk of injury from using the torch in its defective condition and that his injury was due to negligence of the employer.

A finding, that employment of an employee by a painting contractor was continuous from the time when he was hired in September, 1938, until a time in June, 1940, when he was injured while at work, was warranted by evidence that the employer's business was of a seasonal nature, that he let employees go when there was no work and took "what he . . . [could] get" when work picked up, and liked to have a steady group of workmen on whom he could call as he needed them; and that in December of both 1938 and 1939, when work was slack, the employee was laid off until the following spring and resumed work for the employer at the same duties and pay in March or April, 1939, and again early in June, 1940.

TORT. Writ in the Superior Court dated March 28, 1941. The action was tried before *Dowd,* J.

*Nicholas Fusaro & Nunziato Fusaro,* for the defendant, submitted a brief.

*F. X. Reilly, Jr., (J. A. Crotty* with him,) for the plaintiff.

DOLAN, J. This is an action of tort to recover compensation for personal injuries alleged to have been sustained as a result of the defendant's negligence. The case comes before us on the defendant's exceptions to the denial by the judge of his motion for a directed verdict, and of his motion for entry of a verdict for him under leave reserved by the judge, the jury having returned a verdict for the plaintiff.

The evidence would have warranted the jury in finding the following facts: The defendant was a painting contractor. The plaintiff first went to work for him late in September, 1938. The plaintiff's duties consisted in burning paint off buildings by means of an apparatus which had been "acquired brand new" by the defendant in September, 1938. The equipment was made up of a tank containing gasoline to which was attached at its top a "T." Two rubber hoses each about twenty-five feet in length were connected to the "T." A gasoline torch or "gun" was attached to each hose. To start a gun burning, air was pumped into the tank to put the gasoline under pressure and force it to the nozzle of the gun. Alcohol was poured on a plate, ignited with a match, and allowed to burn near the nozzle of the gun. When the gasoline was vaporized, a shutoff valve on the handle of the gun was opened and the gasoline burned at the nozzle. There was a wheel on the gun to regulate the flame. When not in use the guns would be placed upon the tank where they were held by slots. When the plaintiff started to work for the defendant in September, 1938, the equipment was in good order. Two or three weeks later one of the guns, which another employee was operating, started to leak gasoline and caught fire. This was reported on the day of its happening to the defendant. At that time the gun that was being used by the plaintiff was in "pretty bad shape." In the last part of December, 1938, the defendant told the plaintiff that the work was getting slack, that he was laying him off until

springtime "till the work picked up again," and that he would inform the plaintiff when to go back to work for him again. In March or April, 1939, the plaintiff went back to work for the defendant and continued in his employ until December, 1939. The work was "getting slack again" and the plaintiff was laid off until "the following spring." He went to work again for the defendant on June 4, 1940. On June 6 and 7 he was engaged in burning paint off a building, using the equipment before described. He could see that the lining of the tubing and the shutoff valve of the gun that he was using were leaking. Gasoline was leaking all day long from the valve and the hose "right up to the time of the accident." He knew at the time that the guns were dangerous to use. On June 6 another employee told the defendant that the old equipment was so dangerous that he would not touch it, that he would not work on the guns any more because they were "too worn out and leaking." On June 7 the plaintiff was standing about twelve feet from the ground on a ladder rigging staging on the building. The two guns were on the tank, one hanging on each side. The flame of each was "going." The ladder was about six feet from the tank. The plaintiff heard a "puff" on the tank, and looked down. Everything was on fire all over the top of the tank. The flames were around the bottom of the ladder and of the building. The smoke and heat were so strong that he had to jump down from the ladder and as a result sustained personal injuries. There was also evidence that the plaintiff did not shut off the "gas" although he reduced the flame when he placed his gun on the tank, that he could have shut off the "gas if he wanted to" but that "we [the employees] never done it." The plaintiff's duties and pay rate were identical when he worked for the defendant in 1938, 1939 and 1940. The jury could also have found that painting is a seasonal business; that the busiest time is in the spring and summer; that when he does not have work the defendant has to let employees go; that when the work picks up he takes "what he can get"; that he does not exactly summon back employees whom he has let go but he likes to have a steady

group of good workmen on whom he can call when he needs them; that the plaintiff was a good workman; and that during the winter the defendant gets down to a skeleton force.

The defendant was not insured under the workmen's compensation act. It follows that the defences of contributory negligence on the part of the plaintiff and voluntary assumption of the risk resulting in his injury were not open to the defendant. G. L. (Ter. Ed.) c. 152, § 66. *Cronan* v. *Armitage*, 285 Mass. 520, 524, 527. *Neiss* v. *Burwen*, 287 Mass. 82, 89. *Eckstein* v. *Scoffi*, 299 Mass. 573, 575. The defence, however, of contractual assumption of the risk by the plaintiff was open to the defendant because St. 1943, c. 529, § 9A, taking away that defence from employers not insured under the workmen's compensation act, was not enacted until June 12, 1943, to be effective as of November 15, 1943. *Taylor* v. *Newcomb Baking Co.* 317 Mass. 609, 610. *Maciejewski* v. *Graton & Knight Co.* 321 Mass. 165, 167. *Winchester* v. *Solomon, post,* 7, 10.

It is settled that it is the duty of an employer to provide to an employee reasonably safe and suitable tools and equipment with which to do his work. *McPhail* v. *Boston & Maine Railroad*, 280 Mass. 113, 118. *Eckstein* v. *Scoffi*, 299 Mass. 573, 575. *Novash* v. *Crompton & Knowles Loom Works*, 304 Mass. 244, 247. *Roberts* v. *Frank's Inc.* 314 Mass. 42, 45. But in the present case this duty is limited by the doctrine of contractual assumption of risk. That doctrine is that an employer owes no duty to one entering his employment to change the condition of the premises or equipment or methods of operation which obviously existed and were apparently contemplated by the parties when the contract of service was made, and therefore that there is no negligence in continuing them. This limitation upon the employer's duty, however, "does not relieve him from the duty of using reasonable care to protect the employee from risks not ordinarily incidental to the continuance of such obvious conditions. No agreement by the employee to expose himself to such risks is implied from his contract of employment. He does not contractually assume the risk of subsequent negligence of the defendant." *Engel* v.

*Boston Ice Co.* 295 Mass. 428, 432, and cases cited. *Demaris* v. *Van Leeuwen,* 283 Mass. 169, 172. *Doherty* v. *Paul's for Tires, Inc.* 314 Mass. 83, 85. *Kendrick* v. *Lynn Sand & Stone Co.* 317 Mass. 737, 738–739.

In the instant case it is clear that the jury properly could have found that the equipment furnished to the plaintiff for doing the work which he was engaged to perform was in good condition when he was first employed by the defendant in September, 1938, and that at that time there was no obvious risk of injury from its use by the plaintiff. Assuming for the moment that the jury properly could have found that the injuries of the plaintiff were sustained during the continuance of that employment, they could have found that the plaintiff's injuries were caused by negligence of the defendant, and it could not have been ruled rightly that the plaintiff had contractually assumed the risk of using the equipment when it subsequently became unsuitable for use. It is the contention of the defendant, however, that the employment of the plaintiff in September, 1938, did not continue down to the date of the accident; that it ceased when he was laid off by the defendant in December of that year; that the determination of the question whether the plaintiff contractually assumed the risk that resulted in his injury must be tested by the obvious condition of the equipment when he went to work for the defendant on June 4, 1940; that that is a question of law; and in brief that a ruling by the judge was required that the employment of the plaintiff in the years 1938, 1939 and 1940 was not a continuing employment and that the employment in the course of which the accident occurred commenced on June 4, 1940. We are of opinion that, on the evidence before recited, a conclusion was not required as matter of law that the acts of the defendant in letting the plaintiff go in December, 1938, and in December, 1939, were discharges. We think that the evidence presented a question of fact for the jury.

In *Rivers* v. *Krasowski,* 303 Mass. 409, 412, an action of tort by an employee against an employer who was not insured under the workmen's compensation act, where an

auditor, whose findings of fact were to be final, found that the "plaintiff worked regularly as business and weather conditions permitted," the court said in substance that inferences were warranted that during a period subsequent to that when his employment began the plaintiff was working under a continuing contract of employment and that the defect that caused the injury was not in existence when the employment began, and that a finding was warranted that there was no contractual assumption of the risk by the plaintiff.

In *Garnsky* v. *Metropolitan Life Ins. Co.* 232 Wis. 474, the employer had closed its plant on June 22, 1930, and the plaintiff employee, who began working for the employer in May, 1927, was laid off. The employer issued a slip on that date saying that the plaintiff was "leaving company's service" because the company was reducing its force. Thereafter, until December 22, 1930, the plaintiff was not in actual service at the plant and received no wages. He was called back on the latter date and put to work (page 477). On or about June 26, 1931, he sustained a paralytic stroke and became totally disabled. The question was whether he was to be considered as having been continuously employed by the employer for two full years prior to the date of his permanent disability, as required by the terms of a group life policy issued by the defendant insurer under a contract made between the employer and the insurer providing for total disability benefits to any insured employee who had been continuously employed by the employer for two full years. At page 480 the court said in part: ". . . we do no more than to state that, generally speaking, a majority of the jurisdictions which have so far passed upon the subject of group insurance appear to consider that a period of employment is not terminated by a temporary layoff. In many of the cases the question was whether there had been a mere layoff or an actual discharge, and this, of course, was determined as a question of fact." In *Michigan Quartz Silica Co.* v. *Industrial Commission*, 214 Wis. 289, the question whether an employment that was interrupted by a temporary shut down was a dismissal was treated as one of fact. In like

manner in *Wisconsin Granite Co.* v. *Industrial Commission*, 208 Wis. 270, the same question was treated as one of fact; and since the record disclosed that the question whether the relationship of employer and employee was terminated by the closing down of the plaintiff's plant for repairs was not litigated before the commission, the case was remanded to the commission for determination of that question. See also *Buchignani* v. *Ronald Taylor Co.* 256 App. Div. (N. Y.) 1016, affirmed 281 N. Y. 707.

In the present case the judge properly instructed the jury that if they found that the employment of the plaintiff by the defendant in June, 1940, was a separate contract of employment the plaintiff could not recover. By the verdict returned by the jury they impliedly found that it was not a separate contract of employment, and the evidence would have warranted the jury in finding that as a matter of fact the employment of the plaintiff by the defendant was continuous from the date when he was first employed by the defendant down to the time of the accident. The jury could also have found that the equipment in question was in good order when the plaintiff's employment began, that its defective condition arose later, and that the plaintiff's injuries were caused by the defendant's negligence. *Neiss* v. *Burwen*, 287 Mass. 82, 89–90.

*Exceptions overruled.*